## MASON AND FRANKLIN *vs.* THE STATE.

[INDICTMENT FOR BURGLARY.]

1. *Proof of criminal acts not charged, as relevant to questions of identity, intent, or guilty knowledge.*—When a defendant is on trial for burglary,

evidence of other criminal acts than those charged in the indictment may be received, where it is necessary to prove a guilty knowledge, to establish identity, to make out the *res gestæ*, or to make out a chain of circumstantial evidence of guilt, in respect to the act charged.

APPEAL from the City Court of Montgomery. Tried before the HON. T. M. ARRINGTON.

THE indictment in this case was found at the February term, 1868, of the city court, and charged " that before the finding of the indictment Thomas Mason, John Franklin, and Richard Henley, with intent to steal, broke into and entered the dwelling house of J. Godwin Scott, against the peace," &c. The State entered a *nolle prosequi* as to Richard Henley, and a trial being had as to the other two defendants, on the plea of not guilty, they were found guilty as charged in the indictment.

The following bill of exceptions was reserved by the defendants, to the rulings of the court on the trial: " The defendants, together with one Henley, were indicted for burglariously breaking and entering the dwelling house of one Scott, and therein committing a larceny of some $70 in money of the United States. The State entered a *nolle prosequi* as to the said Henley, that he might be used as a witness for the prosecution. There was no direct proof, either of the confessions of the defendants or otherwise, that they, or either of them, committed said offense, or participated in it. The substance of the testimony against defendants was as follows: It was shown that said Franklin and the witness, Henley, arrived in Montgomery, from the Mobile railroad, together; and that they took a room together at the Exchange hotel; that the defendant, Mason, had arrived some days before, and also had a room, other than that occupied by Franklin and Henley, also at the Exchange hotel. There was proof that all of these parties, Franklin, Mason and Henley, were arrested about five o'clock in the morning, on the same day, and in the Exchange hotel, and that when arrested, Mason and Franklin were in the room occupied by Mason, and were dressed, the bed in the room not having been disturbed, and these parties, Mason and Franklin, had, a few minutes before the

arrest, come in from the street; when arrested, Franklin desired to see Henley, his room-mate; was carried to him, and thereupon Henley was arrested, and these were carried to the council chamber. The arrest was made on Sunday morning. Both rooms were searched, and coats and pants were found in each room, and produced on the trial, which had on them the marks of old lime mortar, saturated with water. The name of Mason was marked on one pair of these pants, thus found, and under the head of Mason's bed, when these parties were arrested, was found a bowie knife, having on it marks of lime mortar; when Franklin and Mason, after their arrest, were taken to the room of Henley and Franklin, the latter room was dark, and Henley was undressed in bed, and appeared to be asleep. The room was dark for about two minutes, and when a light was brought, Franklin was sitting on the side of the bed, near to Henley, and within some three feet of Henley's clothes, which were on a chair. Henley testified that one pair of the pants produced in court, and having on them said stains of apparent lime mortar, belonged to Franklin, and the other pair, and the coat, belonged to Mason. There was no proof that Henley was out that night. There was search also made of the three persons arrested, and in the pocket of the coat of Henley was found a roll of bank bills, some $70 in amount, which was pretty well identified as the stolen money of Scott. The said Henley had, just before the search, acted suspiciously, as if trying to conceal that roll of money, by thrusting it back between his coat and its lining, through a hole in the rear of his breast pocket. His actions led to the search and the finding of the money there. Nothing suspicious was found on the persons of Franklin or Mason. The burglarious entrance of Scott's house had been effected on the Saturday night previous to the arrest on Sunday morning. On the Thursday night previous, a burglarious entrance had been effected into the banking house of Micou & Morgan, in said city, and an unsuccessful attempt made to enter and rob its vaults. That bank was in a brick house, and part of the brick and mortar had been removed, in the attempt to enter the

vault. Thursday night was a rainy night. Franklin and Mason were indicted for this burglary, and were convicted, mainly on the testimony of Henley and the circumstantial evidence herein detailed. The testimony was all circumstantial against Mason; and all against Franklin was circumstantial, except that of the witness Henley, who testified to certain confessions of Franklin, as to the attempt to rob the bank of Micou & Morgan. There was no confession of either defendant, as to the burglary or theft in Mr. Scott's house.

A burglarious entrance had been effected in the dwelling of Mrs. Snodgrass, on Friday night, and a boot left there. This boot Henley admitted was his, and testified was one of the pair worn off that night by Franklin.

There was proof that the parties, when arrested, (each of the three) exhibited symptoms of alarm. A shoe, found in the room occupied by Franklin and Henley, would, in the opinion of witnesses, make a track corresponding with one found near the bank attempted to be robbed, and it had clay on it resembling clay there. After the parties were arrested, and while in the council chamber, Henley attempted to throw into the fire something he held in his hand, believed by the witness to be a ribbon of dark color The ribbon fell short of the fire, and Franklin picked it up and threw it into the fire, and thereupon he, Franklin looked at Henley and smiled. Henley testified, that when he left his room, after his arrest, he picked this ribbon up from the head of his bed, and that he carried it in his hand, thinking it was his neck tie, and that at the council chamber, Franklin seeing the ribbon, whispered him to throw it in the fire. It was proved that when Scott's house was burglariously entered, there was stolen therefrom a watch, with a black ribbon attached as a guard chain.

At the council chamber Franklin handed a small package of money, not the $70, to Henley, which the latter placed in his vest pocket. These acts were done stealthily. This is the substance of all the proof, except the testimony of Henley. The witness, Henley, testified, that he came from New Orleans to Montgomery with the defendant, Franklin, or Reagan, or Eagan, as he had formerly known him; that

Franklin professed to be without money, and witness paid his expenses; that Franklin said he expected to meet a friend in Montgomery, and would repay him; that when they reached Montgomery, witness and Franklin took a room together; that they reached Montgomery on Wednesday morning; that at dinner on Wednesday, Franklin and Mason sat together, and that he frequently saw them together, between that time and the arrest; that he, the witness, did not know Mason, and had never spoken to him, except in the introduction to him by Franklin; that on Thursday evening, Franklin told witness that he had a big job on hand, and would be out all night; that he was out until near day, and came in wet and muddy, and said they had failed; that when Franklin went out he took with him the bowie knife which was found, at the time of the arrest, under the head of Mason's bed; that Friday morning Franklin and witness walked down Commerce street, and Franklin pointed out the bank of Micou & Morgan, which he said they had attempted, the night before, to rob; had worked all night, and had signally failed. He said the defendant, Mason, was there; that he was a smart man; and that another was with them, called blacksmith Dan, who was one of the smartest men in New York.

He also testified, that the roll of money found in his coat, and identified as Scott's, had been placed there without his knowledge, and he did not know it was there until it was found on the search. When proof was offered of the burglarious entrance and attempt to rob the bank of Micou & Morgan, the defendants, by their counsel, objected. The objection was overruled by the court, the testimony admitted as above, and the defendants excepted.

When testimony was offered of the burglarious entrance of the dwelling of Mrs. Snodgrass, and leaving the boot there, the defendants, by their counsel, objected. The objection was overruled, the testimony admitted, and the defendants excepted.

When testimony was offered that Franklin, on Friday evening, wore the boots of witness away, and that when he returned, in the latter part of the night, he said to witness that his boots had gone up, defendants, by their counsel,

objected. The objection was overruled and the testimony admitted, and defendants excepted.

While this witness, Henley, was testifying, he stated that Franklin, on one of the days mentioned, had said to him that the boys were afraid that he, Henley, would blow on them, and that they threatened witness, if he did blow. To this testimony defendants objected. The objection was overruled and the testimony admitted, and defendants excepted.

When testimony was offered by the witness, Henley, that Franklin stated to him that Mason was with him in the attempt to rob the bank, defendants objected. The objection was overruled and the testimony admitted, and defendants excepted.

The foregoing is the substance of all the testimony in the cause, tending to prove the defendants to be the burglars ; and this is signed and sealed," &c.

STONE, CLOPTON, and CLANTON, for appellants.
JOHN W. A. SANFORD, Attorney-General, *contra.*

JUDGE, J.—As each case must be tried on its own merits, and be determined by the circumstances connected with it, it is not permissible to prove, as a general rule, that a person has previously committed a crime of a similar character, to show that he committed the criminal act for which he is on trial.

It is contended by the able counsel for the prisoner, that this rule was violated in the present case ; and whether it was or not, forms the principal question in the cause, which we now proceed to examine.

It is clear, on both reason and authority, that although evidence offered in support of an indictment for felony, be proof of another felony, that circumstance does not render it inadmissible, if the evidence be otherwise receivable ; and the books abound in cases in which such evidence has been ruled to be proper to prove *scienter*, to establish *identity*, to make out the *res gestæ*, or to make out a chain of circumstantial evidence of guilt in respect to the act

charged.—*Regina v. Dossit*, 2 Car. & Kir., 306 ; 1 Leading Criminal Cases, 185, 191; Whar. Am. Cr. Law, § 651 ; *The State v. Yarborough*, decided at the January term, 1868, and authorities therein cited.

The conviction of the prisoners in the present case, depended entirely upon circumstantial evidence ; and any indications of guilt arising from the conduct, demeanor, or expressions of the parties, were legal evidence against them. " The law can never limit the number or kind of such indications."—17 Ala. 264; *Martin & Flinn v. The State*, 28 Ala. 81.

In making inquiry as to these indications, the circumstances pointing to a connection of the prisoners with the three burglaries, were so intermixed, that it was proper, if not a necessity, to hear the evidence relating to them all. In *The King v. Whiley and Haines*, (1 Leading Criminal Cases, 185,) Lord Ellenborough, in delivering the opinion of the court, said : " If several and distinct offenses do intermix and blend themselves with each other, the detail of the party's whole conduct must be pursued. There is a case where a man committed three burglaries in one night, and stole a shirt at one place and left it at another; and they were all so connected that the court heard the history of the three different burglaries."—See, also, 2 Starkie on Evidence, part 2, m. pp. 312, 313 ; *Regina v. Bleasdale* 2 Car. & Kir. 765 ; 2 Russsell on Crimes, m. pp. 775, 716 777.

To have excluded the evidence in the present case, relating to the burglaries for which the prisoners were not on trial, would have broken the chain, formed of links more or less perfect, connecting them with the one which constituted the subject matter of the trial.—*Com. v. Turner*, 3 Met. 19. " It frequently happens," says BROCKENBROUGH, J., in *Walker v. The Com.*, 1 Leigh, 574, " that as the evidence of circumstances must be resorted to for the purpose of proving the commission of the particular offense charged, the proof of those circumstances involves the proof of other acts, either criminal or apparently innocent. In such cases, it is proper that the chain of evidence should be unbroken. If one or more links of that chain

consist of circumstances which tend to prove the prisoner has been guilty of other crimes than that charged, this is no reason why the court should exclude those circumstan- stances. They are so intimately connected and blended with the main facts adduced in evidence, that they can not be departed from with propriety ; and there is no reason why the *criminality* of such intimate and connected cir- cumstances should exclude them, more than other facts apparently innocent."

But further, the evidence in the cause, irrespective of the separate declarations of Franklin, which at least were competent evidence against him alone, tended to show a *privity* and *community of design* between the prisoners to commit offenses of the character charged against them. In every such case, great latitude is allowed in giving in evidence the *acts, declarations,* and *conduct,* of each and all the associates, *in furtherance of their common unlawful pur- pose ;* and such acts, declarations and conduct, are evidence against each of them.

In *McKenney v. Dingley,* 4 Greenleaf, 172, it was held that in order to avoid a sale of goods, on the ground of false and fraudulent conduct in the vendee, in representing him- self to be a man of good property and credit, when he was not so, " it was competent for the vendor, in addition to the direct proof of the case, to give evidence of similar false pretences successfully used, to other persons, *in the same town, about the same time, to show a general plan to amass property by fraud.*" If it was the general plan of the prisoners to commit burglaries in concert, in the city of Montgomery, each offense committed pursuant to such general plan, and in furtherance of it, was competent evi- dence on the trial of any one offense thus committed. The prisoners might have protected themselves from any im- proper effect of such evidence, by the asking of an ap- propriate charge.—See further, the following authorities : *Bottomley v. The United States,* 1 Story, 135 ; *Rex v. Roberts,* 1 Campbell, 400 ; *Com. v. Eastman,* 1 Cush. 189 ; *Martin & Flinn v. The State,* 28 Ala. 71 ; *Frank v. The State,* 27 Ala· 37 ; *Stewart v. The State,* 26 Ala. 44.

There being no error in the record, the judgment is affirmed.

BYRD, J.—I fully concur in the correctness of the general principles of law announced in the opinion of the court, but differ in their application in this. In my opinion, the objection taken to the evidence "of the burglarious entrance of the dwelling of Mrs. Snodgrass, and leaving the boot there," should have prevailed upon those principles; and without expressing any opinion upon similar questions raised upon the record, I think the cause should be reversed for the action of the court overruling this objection. The evidence comes within the influence of the general principles announced by the court, and it does not so clearly appear to me to come within any exception thereto, as to have authorized its admission.