220 So.2d 862

**Leroy CRUMLEY**

**v.**

**STATE.**

**4 Div. 613.**

Court of Appeals of Alabama.

Jan. 7, 1969.

Rehearing Denied Jan. 28, 1969.

Smith & Smith, Dothan, and J. Fletcher Jones, Andalusia, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

Crumley was convicted of second degree burglary for breaking and entering with larcenous intent into a building of Adams Supply Company, a corporation. His sentence was seven years in the penitentiary.

Motion for new trial was filed too late. Code 1940, T. 13, § 119.

## I.

Before evidence was elicited, the defendant moved for a continuance because he claimed prejudice from his photograph being posted on a bulletin board in the sheriff's office. Noting that no proof was adduced that any of the jury had seen this picture, the court overruled the motion for continuance. The ruling was correct.

## II.

About 8:55 on the night of January 11, 1967, Mr. Ronald Hendrickson, who worked for Adams Supply Company in Dothan, went there to get some material for a plumber. In the warehouse he found a small safe which had been opened. This safe came from the office.

A door on the inside of the "yard" had been pried open. In the office another safe had been broken open and a brick wall around a vault door had been partially dismounted.

In brief the Attorney General has given the following summary:

"On the night of January 11, 1967, the Adams Supply Company of Dothan was burglarized. A Dothan city policeman testified that on that night he saw parked across the street from the Adams Supply Company a two tone blue 1965 Plymouth automobile bearing tag number 67 Ala. 11 county, 23–114; and that inside this car he saw a keyhole saw, hack saw, some blades, a hat, some clothing and some fruit. On January 13, 1967, he saw the same car in Andalusia, behind the sheriff's office and at the same time he saw the same contents of the car.

"A Dothan city detective testified that on the night of the burglary of the Adams Supply Company, he went to the site of the burglary and dusted for fingerprints but found only some smudges which were in his opinion made by a person wearing gloves.

"Another city detective testified that on the morning of January 12, 1967, he went to the Adams Supply Company and discovered footprints in the back of the building; also he discovered a couple of iron tools and a sledge hammer, the handle of which had been sawed off. He further testified that he received a boot from a deputy sheriff in Andalusia, and that he sent this boot along with a sample of dirt from the back of the Adams Supply Company to the office of the State Toxicologist. This witness identified a shoe box, three pairs of gloves, a map of the State of Florida, a map of Georgia and Alabama, and a newspaper which he also received from the deputy sheriff in Andalusia.

"* * * a member of the Montgomery Police Department * * * testified that on the day of January 12, 1967, he saw the two tone blue 1965 Plymouth in Andalusia and that it had four men in it.

"An Alabama State Trooper [John Harold] testified that he saw the appellant on the night of January 12, 1967, in Andalusia with Earl Ivy Bayless and Floyd Ray Goodwin, in front of a motel about

one hundred yards from the M. L. Moore Motors, * * * the appellant got into a car and left * * *. [Harold] followed the appellant and later engaged him in conversation at a truck stop where appellant stated that he was going to a night club where his car was parked out of gas. The witness stated that he went with the appellant to the night club and that when they arrived the appellant stated that he might as well be honest about it because he had no car at the night club, at which time the appellant was arrested. [Harold] further stated that before they reached the night club they saw the Plymouth car [which bore the same tag as the one seen in Dothan across from Adams Supply]. * * * at the time of his arrest of the appellant he was wearing two pair of pants.

"Sheriff Gantt of Covington County, testified that he first saw the appellant on January 12, 1967, about two miles out of Andalusia and that later on that same night he learned that the M. L. Moore Motors had been burglarized, and that at the scene of this burglary they found a screw driver, two heavy tire tools and a sledge hammer, the handle of which had been sawed off. He further testified that under the authority of a search warrant he searched the 1965 Plymouth automobile and discovered several items which he turned over to Deputy Sheriff Berry or Lt. Dent. He further testified that the appellant was wearing two pair of pants, and white tennis shoes. The Sheriff further testified that he was in the party that went with the appellant to the night club and that as they pulled in the 1965 Plymouth drove off, and that this car was less than one-half mile away when the appellant was placed under arrest.

"The State's witness Dubose testified that on January 12, 1967, he sold to Earl Ivy Bayless and Floyd Ray Goodwin several tools and he identified one of the tools recovered from the 1965 Plymouth and two found at the M. L. Moore Motor Company at Andalusia the day it was burglarized as tools which he sold to Bayless and Goodwin.

"Deputy Sheriff Berry of Covington County testified that on the morning of January 13, 1967, he saw the appellant in the Covington County Jail and that also on that day he removed certain articles from the 1965 Plymouth and that the *appellant asked him what he was doing with the stuff that he was taking out of the car.* (Italics added.)

"The items removed from the 1965 Plymouth included a hacksaw, two punches, a pair of boots, a shoe box, three pair of gloves, a map of Florida, a map of Alabama, a newspaper, a calendar, Hathcock Lumber Company sales slip. The witness also identified a picture of several tools as tools removed from the 1965 Plymouth, these included a lug wrench, a heavy chisel, a keyhole saw, two punches, a hawkbill knife, a hacksaw and two blades. Some of the tools were in court and some were not.

"Investigator Pate of the Department of Public Safety testified that he made the picture of the tools testified to by Deputy Berry and that the picture accurately and correctly depicted them as they were on January 13, 1967. The witness testified that he also took the picture of the tools recovered by Sheriff Gantt at the burglarized Moore Motor Company and that the picture accurately and correctly depicts them as they appeared on January 13, 1967.

"Dr. Purnell of the State Department of Toxicology testified that he received the pair of boots and dirt samples from Lt. Deal and that after comparing the dirt from the boot and the test sample it was his opinion that the dirt came from the same general area.

"The evidence presents a clear and convincing chain of circumstances leading to only one conclusion—the guilt of the appellant.

"It would indeed be pleasant to have eye witness testimony to each crime which is committed in Alabama. However, such is not the case and often the State must proceed on circumstances. This does not render this evidence second class or inferior.

"The chain in the instant case was thoroughly connected and tied directly to the appellant by his own words [to Deputy Berry]—'What are you doing with the stuff [* * * from] the car.'"

### III.

Appellant argues that various remarks of the trial judge "reveal in the aggregate * * * judicial bias." We have considered the instances cited and consider that Supreme Court Rule 45 would cover any injury. Hence, we shall not explore for error, if any.

### IV.

██ In brief Crumley contends the trial judge erred in overruling his motion to exclude the State's evidence on the ground that it had "failed to prove its case; [and] to prove the elements of burglary." R. 181. This claimed failure was:

"(A) That the defendant broke into Adams Supply Company in Dothan, Alabama on the night of January 11, 1967.

"(B) That the defendant, Leo Crumley was connected with any evidence with the breaking and entering of Adams Supply Company on January 11, 1967 in Dothan, Alabama.

"(C) That the evidence wholly fails to show any legal and competent testimony that the defendant, Leo Crumley was connected with One 1965 Plymouth automobile which was identified as being in front of Adams Supply Company of Dothan, Alabama, on the night of January 11, 1967."

In Wildman v. State, 42 Ala.App. 357, 165 So.2d 396, we reached such a conclusion in respect of circuit court cases numbered 5337 and 5340.

Some of the aspects distinguishing the instant case from *Wildman*, supra:

1. Joint possession of car;

2. Crumley's lying to Trooper Harold about it being out of gas;

3. Double trousered garb;

4. Boot from car with similarity of soil on boot to that from Adams Supply;

5. Tools left at scene of both burglaries;

6. Dubose's testimony of selling tools to Crumley's companions together with sales slip found in car;

7. Berry's testimony as to Crumley's enquiring of him (while Crumley and the others were in the Covington County jail), R. 111: "He asked what we were doing with the stuff we were taking out of the car."

This last conversation can be interpreted in different ways. Crumley's intonation in expressing "the stuff" (if those were his exact words) could be either innocent or possessive in connotation and hence, if possessive, then inculpatory. That is, in the context used or in the emphasis of intonation, the definite article "the" might be the equivalent of "my" or "our" as equally as it might have no qualification other than to make clear that the "stuff" came from the car.

Ordinarily, we should incline to the latter view. Here, however, the trial judge in another ruling seems to have got the impression that "the" was used in the sense of "our." R. 172.

Certainly, the concern underlying this query tends to negative innocence as much as it might reflect mere idle curiosity on Crumley's part. This we take to be the implication of the conclusion of the above quoted part of the State's brief.

Accordingly, we conclude that on the grounds stated the trial judge correctly denied the motion to exclude.

## 696

### V.

#### Evidence of Another Burglary

■ In our rules of evidence, those matters, i. e., words or things which logically tend to prove part or all of the proposition at issue are relevant and hence (subject to exceptions) may come in for the jury to consider, i. e., are admissible. Issues can be collateral or main (e. g., the general issue).

The troublesome concept in the foregoing (borrowed from McCormick, Evidence, § 115) lies in the compass of "matters which logically tend to prove." First off, are we to confine logic to the notion of scholasticism with its connotations of the Socratic syllogism? Second, if, however, we use logic also to cover the inductive as well as deductive, then the mind is afforded wider scope, as when one demonstrates by empiric methods.

In this latter search a similibus ad similia there are two main practical problems. Particularly, proving that man once or more behaved in a certain way does not alone make it probable (though it may be possible) that he so behaved on the occasion of concern. And, if there is some characteristic mark on a man's acts on prior and later occasions, then has the probability of other men also acting similarly been effectively eliminated?

■ The general rule of our criminal law of evidence on this point is: evidence of prior offences, subject to "well-recognized" exceptions, is inadmissible.

This general rule of exclusion with hints of some of the putative reasons for it and its qualifications can be found in Brasher v. State, 249 Ala. 96, 30 So.2d 31. Also, see McElroy, Evidence (2d Ed.), § 69.01, where we find:

"On the trial of a person for the alleged commission of a particular crime, evidence of his doing of another act which itself is a crime is not admissible if the only probative function of such evidence is to show his bad character, or as sometimes expressed to show his inclination or propensity to commit the type of crime for which he is being tried. * * This is simply an application of the Character Rule which forbids the state to prove the accused's bad character by particular misdeeds.

"However, if accused's commission of another crime or a misdeed which is not a crime is an element of guilt, or tends to prove his guilt otherwise than as tending to prove guilt via bad character, proof of such other crime is admissible. * * *

"In their mental struggle to determine whether evidence of accused's commission of another crime is admissible for a purpose other than as tending to show accused's guilt via his bad character, the appellate courts in numerous opinions have set forth repeatedly a list of the various purposes for which evidence of accused's commission of another crime is admissible. This recurrent effort by appellate court judges to orient themselves to generalities, and to decide whether such evidence is admissible in the case before them is to be commended as relevatory of an earnest desire to reach a correct decision and of the frequent difficulty with which they are beset in making a decision.

"However, it must not be considered that such a listing of admissible purposes was intended to be exhaustive. It must ever be borne in mind that the state may prove the accused's commission of another crime if such other crime is relevant for any purpose other than that of showing his guilt thru the medium of bad character.

"In the full recognition of the impossibility of a complete detailed specification of all possible purposes for which accused's commission of another crime is admissible, an attempt will be made below to set forth what seem to be the prin-

cipal purposes for which proof of such other crime is admissible."

The classifiers use various pigeon holes into which they consign divers and sundry decided cases creating exceptions to the general rule. Thus, Judge McElroy suggests:

a) Physical capacity, skill or means, citing Snead v. State, 243 Ala. 23, 8 So.2d 269;

b) Continuous transaction (res gestae);

c) Guilty knowledge;

d) Criminal intent;

e) Plan, design, scheme, system;

f) Motive; and

g) Identity.[1]

Wigmore, supra, § 300, employs the terms Knowledge, Intent or Design. In § 306, Wigmore also differentiates Motive, Identity and inseparable acts (e. g., Johnson v. State, 272 Ala. 633, 133 So.2d 53). In Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847, Stakely, J., uses these same six categories given by Wigmore.

We are confronted in this appeal with a decisional antimony. We must contrast Mason v. State, 42 Ala. 532 (a burglary conviction)[2] with Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847 (a robbery conviction). See also: Wigmore (3rd Ed.), §§ 304 and 351, et seq.; McElroy, Law of Evidence in Alabama (2d Ed.), §§ 69.01–70.25.

Code 1940, T. 13, § 95, conforms us compulsorily to follow opinions of the Supreme Court of Alabama. The Legislature has given us no calculus to differentiate between seeming conflicts in that Court's opinions.

However, Mason, 42 Ala. 532, has stood without being overruled for a century. Reference to Shepard's Citator gives a beaten path of but one burglarious footstep.

This was in Whitley v. State, 37 Ala.App. 107, 64 So.2d 135.

This latter case afforded a much more embracing nexus between the first and second burglary such as paint marks and the like, than the links here. However, we find nothing to justify our disregarding the Mason opinion (42 Ala. 532).

■ As we conceive the majority opinion in Mason, 42 Ala. 532, it is to the effect that similar fact evidence is admissible if the indictment charges burglary. The similar fact evidence may cover other burglaries of the same burglars at or near the same place and time as the burglary charged where the proof rests solely or mainly on circumstantial rather than direct evidence. Also, it would seem deducible that the effect of the State's case would be to show a burglarious conspiracy of dimensions and objects definite enough to exclude the agency of other burglars. The unities of time, place and action seem to be in mind.

Hinton v. State, 280 Ala. 48, 189 So.2d 849, by the late Mr. Justice Goodwin was a prosecution for murder. Evidence of burglary came in: held, reversible error. We distinguish because (1) a single perpetrator was shown; and (2) the burglary was alien to homicide. See also Gibson v. State, 14 Ala.App. 111, 72 So. 210; Baker v. State, 19 Ala.App. 437, 97 So. 901.

In conclusion, we consider that (1) since Mason, 259 Ala. 438, 66 So.2d 557, 42 A.L.R. 2d 847, a robbery case fails to recognize the rationale of the earlier Mason; and (2) since the earlier case has stood for over one hundred years we cannot depart from it under Code 1940, T. 13, § 95.

The judgment below is

Affirmed.

---

1. *McElroy* has other categories which the writer has chosen to omit.

2. Wigmore, supra, § 351, indicates footnote 2, Vol. II, p. 256, implies that in Mason, 42 Ala. 532, the stated facts fail to support the rule invoked.