151 N.J. Super. 555 (1977)
377 A.2d 718
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HOWARD WARREN ATKINS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1977.
Decided July 14, 1977.
*557 Before Judges HALPERN, ALLCORN and BOTTER.
*558 Ms. Mary Elizabeth Marchev, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Ms. Susan T. Sinins, Assistant Deputy Public Defender, of counsel and on the brief).
Ms. Ileana N. Saros, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
The opinion of the majority was delivered by BOTTER, J.A.D.
Defendant was convicted in a jury trial of breaking and entering with intent to steal and was sentenced to a three to five-year term in State Prison. On this appeal defendant contends that the trial judge erred (a) in charging the jury, in effect, that voluntary intoxication was not a defense to the crime charged, and (b) in admitting, over defendant's objection, exhibits showing that defendant had been convicted in 1965 for two crimes involving breaking and entering.
Defendant was charged with breaking and entering into the one-family home of Mr. and Mrs. Maggipinto (M) on August 22, 1974 with intent to steal property, in violation of N.J.S.A. 2A:94-1. Defendant was apprehended in the home shortly after midnight. The homeowners, who were in an upstairs bedroom, heard a loud noise downstairs around 12:15 A.M. Thinking it was her young son, Mrs. M went to investigate. She testified that she heard a voice in the den say, "just don't turn on the light." She screamed and ran upstairs to call her husband. During this time defendant remained in the den which, incidentally, contained a door leading to the outside patio. Mr. M arrived and again the voice said, "don't turn on the light." Mr. M ignored the warning and turned on the light. Mrs. M testified that when they saw defendant in the den they "told him to get out." To this defendant replied, "I'm in the wrong house." Seeing that defendant had nothing in his *559 hands, Mr. M seized him and led him into the kitchen. Mrs. M went upstairs to telephone the police. While waiting for the police defendant asked for a cigarette and again said he was in the wrong house. Further investigation revealed that a lock on a basement window had been broken, the window was open and the door jamb leading from the basement to the kitchen was splintered and its sliding bolt lock had been forced.
A police officer testified that defendant said he believed he was entering the home of a girlfriend named S.V. who, defendant said, lived next door to the house in which he was apprehended and that he entered the house through the window because he did not want S.V.'s husband to know he was coming to see her. An investigation failed to disclose any person named S.V. living in the area.
Defendant did not take the stand. However, defense witnesses testified that defendant had been intoxicated earlier that day and evening. One witness was defendant's partner in a business involving the sale and service of radios, television sets, car radios and other items. This witness suggested that business was good but that defendant had been drinking heavily because of marital problems and that it was difficult to run the business without defendant's help. There was evidence to show that defendant had been drinking all day on August 22, 1974. His partner testified that he last saw defendant around 6:30 P.M., that defendant was totally drunk and had a bottle in his hand.
To rebut the defense of mistake or accident the prosecution offered in evidence certified copies of defendant's two convictions in 1965. One was for entering without breaking with an intent to steal and the other was for an attempt to break and enter with intent to steal. Reliance was placed on Evid. R. 55, the rule dealing with the admissibility of other crimes evidence. Defendant's objection to the admissibility of this evidence was overruled. In his charge to the jury the trial judge stated that evidence of the commission of other crimes is inadmissible to establish a propensity *560 to commit the crimes charged in the indictment for which defendant was on trial. He further charged that the 1965 convictions could be considered solely as they bear "upon the issue of the absence of mistake or accident when the defendant entered the home of Mr. and Mrs. Maggipinto on August 22, 1974."
Evid. R. 55 provides:
Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
Evid. R. 47, referred to in Evid. R. 55, provides in part that the prosecution may not offer proof of a trait of character of the defendant in a criminal trial unless the judge has previously admitted evidence of good character offered by the defendant. Evid. R. 48, which pertains to evidence of a person's character with respect to care or skill, is not pertinent to the issue before us.
Were the 1965 convictions for similar offenses admissible to prove "absence of mistake or accident" (or, for that matter, motive, intent or plan) with respect to defendant's conduct in 1974? We think not. On the facts of this case we conclude that the trial judge erred in admitting this evidence. (Under present law, evidence of these prior convictions could have been admitted only to affect defendant's credibility had defendant offered himself as a witness at the trial. See N.J.S.A. 2A:81-12; State v. Hawthorne, 49 N.J. 130 (1967); State v. Kociolek, 23 N.J. 400, 417-418 (1957)).
In State v. Kociolek, supra, the court said that, although proof of other crimes of a like nature cannot be offered to show that defendant would be likely to commit the crime for which he is being tried, such proof may be offered if it tends to show "opportunity, motive, intent, a particular *561 element of the crime charged, and the like * * *." The court noted, however, that where other crime evidence is offered to prove motive, knowledge or intent "such evidence is limited to facts which are so connected with the subject in controversy as to make it apparent that the party had a common purpose in both transactions," quoting from Bullock v. State, 65 N.J.L. 557, 575 (E. & A. 1900). In Bullock the court went on to say (at 575) that "it is not relevant to show that the defendant has committed other similar crimes which are not connected in any way with the one in question."
State v. Kociolek, supra, also quotes extensively from State v. Raymond, 53 N.J.L. 260, 264 (Sup. Ct. 1891). Raymond held, in a case in which defendant was tried for arson of a dwelling house, that error was committed in showing that in a six-year period six fires had occurred in other buildings in which defendant had an interest. The trial judge charged the jury that this proof was limited to the issue of whether the fire in question had been accidental or whether defendant had a motive or intent to defraud anyone at the time of the fire in question. The court (at 264-265) reviewed exceptions to the rule excluding proof of other crimes. It said (at 265) that there must be "some other real connection" between the extraneous crimes and the crime in question beyond the fact that they "sprung from the same vicious disposition." (While this holding supports our determination in this case, Wigmore's analysis of the problem, which will be referred to below, raises doubts as to its correctness. See 2 Wigmore, Evidence (3 ed. 1940), §§ 300 to 307, at 192 to 207, especially § 303 at 201-202 dealing with "anonymous instances" of the same or similar occurrence.)
We must distinguish the problem at hand from other-crimes evidence problems more commonly encountered. In its worst form, proof that a defendant committed various previous or subsequent crimes unrelated to the crime being tried may tend simply to show that defendant is a "bad *562 man," one who has a "criminal disposition," and this proof is explicitly precluded by Evid. R. 55. State v. Kociolek, supra, in which defendant was on trial for murder, offers an example. There the court condemned the cross-examination of defendant which elicited proof that he had committed other crimes involving a stolen automobile, bad checks and forgery which the prosecution sought to justify as a permissible attack upon defendant's credibility and as proof of "his `motive' in developing his life story prior to the murder." 23 N.J. at 418. For the same reason State v. Harris, 105 N.J. Super. 319 (App. Div. 1969), found manifest injustice and, therefore, plain error (R. 1:7-2; R. 2:10-2) in the consolidation for trial of two indictments charging a number of unrelated crimes. It is not that proof of bad character or a propensity to commit crimes is entirely irrelevant logically in tending, with other more pertinent evidence, to prove defendant's guilt on a specific instance. Michelson v. United States, 335 U.S. 469, 475-476, 69 S.Ct. 213, 218, 93 L.Ed. 168, 173-174 (1948); see Report of the New Jersey Supreme Court Committee on Evidence (1963) (hereinafter referred to as the 1963 Evidence Committee Report) at 101. The danger is that such evidence may weigh too heavily with the jury and deny defendant fair opportunity to defend himself against a particular charge. Michelson v. United States, supra; Boyd v. United States, 142 U.S. 450, 458, 12 S.Ct. 292, 295, 35 L.Ed. 1077, 1080 (1892); see Spencer v. Texas, 385 U.S. 554, 570-575, 87 S.Ct. 648, 657-659, 17 L.Ed.2d 606, 618-620 (1967), (Warren, C.J., dissenting), where a minority of the court declared that evidence of prior convictions which served no valid evidential purpose in relation to the crime currently charged jeopardized defendant's presumption of innocence and violated the Due Process Clause. See also, 1963 Evidence Committee Report at 101-102.
On the other hand, prior-crimes evidence is generally accepted "when it is particularly probative in showing such things as intent * * * malice * * * motive * * * a system of *563 criminal activity * * * or when the defendant has raised the issue of his character * * * or when the defendant has testified and the State seeks to impeach his credibility." Spencer v. Texas, supra, 385 U.S. at 560-561, 87 S.Ct. at 652, 17 L.Ed.2d at 612 (emphasis supplied). Thus, under Evid. R. 55, which reflects prior New Jersey law (1963 Evidence Committee Report at 101), the beatings defendant previously inflicted upon his wife may be shown in a trial for her murder when such evidence logically tends to prove malice or some other element of the crime charged. State v. Donohue, 2 N.J. 381, 388 (1949). Similarly, defendant's other crimes may prove motive or intent, as in State v. Baldwin, 47 N.J. 379, 391 (1966), cert. den. 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966), where the State contended that defendant killed the victim, his codefendant in a robbery indictment, to silence him from testifying for the State.
Other-crimes evidence may be offered to disprove innocent intent or the absence of mistake or accident, McCormick, Evidence (2 ed. 1972), § 190 at 450, especially in rebuttal after the claim of accident or mistake has been asserted. Id. at 452; 2 Wigmore, Evidence, supra, §§ 300 and 307 at 192-193, 207. Little difficulty is presented when the prior acts are "so related to the crimes charged as to time, place and circumstance as to evidence a continuous state of mind * * *." State v. Kozarski, 143 N.J. Super. 12, 17 (App. Div.), certif. den. 71 N.J. 532 (1976); see State v. Wright, 132 N.J. Super. 130, 148-150 (App. Div. 1974), rev'd on dissenting opinion of Allcorn, J., 66 N.J. 466 (1975); State v. Rajnai, 132 N.J. Super. 530 (App. Div. 1975).
However, mere similarity or identity in the crimes charged is not sufficient to allow proof of the other crimes. Lovely v. United States, 169 F.2d 386 (4 Cir.1948); State v. Little, 87 Ariz. 295, 350 P.2d 756 (Sup. Ct. 1960); State v. Putnam, 178 Neb. 445, 133 N.W.2d 605 (Sup. Ct. 1965). In State v. Putnam, supra, defendant was on trial for breaking and entering with intent to steal. The court held that it *564 was reversible error to admit proof that defendant had committed two other illegal entries in the same county when they bore no relation to the offense charged and did not prove a common scheme, plan or intent. State v. Little, supra, held that two prior narcotics sales could not be admitted in the trial of a similar sale within one month, even where the alleged purchaser was involved in one of the earlier transactions. The court held that the sales were essentially unrelated and did not establish a common scheme. Lovely v. United States, supra, involved a charge of rape in an automobile where the defense claimed that the sexual intercourse was by consent. Proof that defendant raped another woman in an automobile in the same area 15 days before was held inadmissible.
But proof of other crimes to refute a claimed innocent intent or mistake may be more readily admitted than other crimes evidence offered to prove another element authorized by Evid. R. 55.[1] Proof of prior, like crimes, attempted or committed, which bear a close relationship in modus operandi, time, place or other characteristics may be sufficiently probative of criminal knowledge, intent or the absence of mistake or accident to justify admission. United States v. Robbins, 340 F.2d 684 (2 Cir.1965); United States v. Ross, 321 F.2d 61 (2 Cir.1965), cert. den. 375 U.S. 894, 84 S.Ct. 170, 11 L.Ed.2d 123 (1963); Schmeller v. United States, 143 F.2d 544 (6 Cir.1944); United States v. Feldman, 136 F.2d 394 (2 Cir.1943), aff'd 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944); Crumley v. State, 44 Ala. App. 692, 220 So.2d 862 (Ct. App. 1969), cert. den. 283 Ala. 713, 220 So.2d 868 (Sup. Ct. 1969), cert. den. *565 396 U.S. 831, 90 S.Ct. 84, 24 L.Ed.2d 82 (1969); People v. Williams, 6 Cal.2d 500, 58 P.2d 917 (Sup. Ct. 1936); State v. Addison, 249 Iowa 905, 87 N.W.2d 916 (Sup. Ct. 1958); State v. Hurst, 257 La. 595, 243 So.2d 269 (Sup. Ct. 1971); State v. Klotter, 274 Minn. 58, 142 N.W.2d 568 (Sup. Ct. 1966); State v. Martin, 91 Abs. 147, 191 N.E.2d 581 (Ohio Ct. App. 1961); see United States v. Park, 421 U.S. 658, 677-678, 95 S.Ct. 1903, 1914, 44 L.Ed.2d 489, 503-504 (1975).
To disprove innocent intent or accident by the repetition of instances which logically rule out a chance occurrence requires "at least * * * that prior acts should be similar." 2 Wigmore, Evidence, supra, § 302 at 200. "In short, there must be a similarity in the various instances in order to give them probative value * * *." Id. Wigmore points out that what is involved is the doctrine of chances; that to prove criminal intent or to disprove innocent or accidental or mistaken conduct one reasons that an unusual, abnormal or accidental element may be present in one instance, "but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them." Id., § 302 at 196. Thus, when innocent intent or mistake is asserted, proof of other similar offenses is more liberally allowed than, for example, when identity is the issue (see n. 1, supra), because such proof "tends to show the party knew or intended to do what he was doing on the particular occasion." Jones v. Commonwealth, 303 Ky. 666, 668, 198 S.W.2d 969, 970 (Ct. App. 1947).
The tension, then, is between the risk of undue prejudice by proof tending to show that defendant is a "bad person" and the probative force of the other-crimes evidence in proving or disproving a fact in issue. The Comment on Evid. R. 55, 1963 Evidence Committee Report at 103, cautions:
Moreover, the trial judge should insist on high standards of relevance and of probative value before admitting "other crimes" evidence, *566 e.g., that it is not remote, or that, by virtue of its similarity, it actually sheds sufficient light on an independently relevant issue. It is especially important that the trial judge not admit other crimes evidence by redefining what is actually propensity or disposition, and calling it "motive" or "plan". Finally, where identity is an issue the "other crimes" should be so similar to the crime in issue as to actually provide evidence of high probative value on the issue of identity.[2]
In McCormick, Evidence, supra, at 453, the problem is stated in terms of "balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, * * * the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to overmastering hostility." Similarly, the Comment on Evid. R. 55, 1963 Evidence Committee Report at 104, emphasizes the need to "weigh carefully its probative value against the counter-factors," such as undue prejudice, contained in Evid. R. 4.
Here the only knowledge we have of the prior crimes is that one involved an illegal entry without breaking and the other was an attempted breaking and entry with intent to steal. The crimes were committed in 1965, nine years before the offense in question. We know nothing about the modus operandi or the location of the earlier crimes. We know nothing of defendant's sobriety on the earlier occasions nor whether in the 1965 episodes he had used the excuse that he was in the wrong house. We are not saying that identical circumstances must exist before other-crimes evidence may be admitted to disprove a claim of mistake or accident. However, there is nothing in the 1965 offenses which relates them to the crime in question except that they tend to suggest a disposition on defendant's part to make illegal entries for the purpose of theft. The 1974 *567 entry could have been a mistake; it is not strongly disproved by intentional wrongful entries in 1965. What tends to disprove defendant's claim of mistake here is what actually occurred in 1974, not what had occurred in 1965.
There was considerable evidence in this case to show defendant's intent at the time in question. In addition to facts related above, there was proof that defendant had disconnected a portable television, had wound the electric cord around its handle, had closed the antenna, and had moved the television set as well as a clock from the kitchen to the dining room floor. There was also testimony that defendant told Mr. M, "I just want[ed] to take your TV." Thus, weighing the probative value of the 1965 crimes, especially their remoteness in time (but see United States v. Denton, 336 F.2d 785 (6 Cir.1964)), the apparent lack of need for the evidence, and its potential for prejudice, we conclude that the admission of the 1965 judgments of conviction was a mistaken exercise of discretion and constituted reversible error.
The State's brief concedes that the risk of prejudice in other-crimes evidence is in its tendency to prove that defendant is a man of "bad character." But the State argues that the evidence here was properly admitted and need not have been excluded "simply to prevent noisome odors about the defendant from reaching the jury's nostrils," quoting from United States v. Bradwell, 388 F.2d 619, 622 (2 Cir.1968), cert. den. 393 U.S. 867, 89 S.Ct. 152, 21 L.Ed.2d 135 (1968). However, there the court approved the admission of evidence which it deemed "highly probative." In further support of the admissibility of the 1965 convictions in this case, the State cites State v. Hummel, 132 N.J. Super. 412, 425-426 (App. Div.), certif. den. 67 N.J. 102 (1975), and State v. Slocum, 130 N.J. Super. 358, 363 (App. Div. 1974). In his dissent Brother Allcorn adds State v. Schuyler, 75 N.J.L. 487, 488 (E. & A. 1907), and State v. Donohue, supra, 2 N.J. at 388, to support the State's position.
*568 In our view, however, these cases are not persuasive on the issue before us. We discussed State v. Donohue above, a case in which defendant was convicted of murdering his wife. In that case no error was found in the admission of evidence of prior beatings inflicted by defendant upon his wife, particularly including an incident occurring more than seven years before the murder. The evidence was admitted to prove malice or ill will toward the victim. Similarly, in State v. Schuyler, supra, which was also a murder case, the court upheld the admission of evidence that an altercation between defendant and the accused had taken place about ten years before the killing, holding that the remoteness in time went solely to the weight of the evidence in proving an element of the crime, namely, ill will and state of mind tending to prove a deliberate murder rather than a crime of suddenly provoked passion. In State v. Slocum, supra, defendant was charged with robbery and atrocious assault and battery. The court upheld the admission of evidence that five years earlier defendant had robbed the same victim and that she had testified against defendant in a trial that resulted in his conviction. This evidence was admitted to show malice or revenge, bearing on motive and intent. Thus, none of these cases support the admission of nine-year-old convictions for breaking and entry in order to disprove the defense of accident or mistake in a case charging a similar crime.
We now confront the "harmless error" argument, the contention that even if proof of the two old convictions should not have been admitted such proof did not deprive defendant of his right to a fair and impartial trial. The harmless error rule, embodied in R. 2:10-2; State v. LaPorte, 62 N.J. 312, 318-320 (1973), is a rule whose application has increased in recent years at a rate that appears to exceed the rate of increase in crime and criminal caseloads. By this rule appellate judges signify their estimate that the record contains evidence of guilt so convincing that the jury undoubtedly would have convicted defendant even with *569 out such evidence; that "beyond any reasonable doubt" the error did not lead the jury "to a result it otherwise might not have reached," and/or that the "nature" of the error was clearly incapable of producing "an unjust result." See State v. LaPorte, supra; State v. Macon, 57 N.J. 325, 336-341 (1971); Traynor, The Riddle of Harmless Error 3-51, (1970), (hereafter, Traynor, The Riddle); Cameron and Osborn, "When Harmless Error Isn't Harmless," 1971 Law & the Soc. Order (Ariz. St. U.L.J.) 23; Mause, "Harmless Constitutional Error: The Implications of Chapman v. California," 53 Minn. L. Rev. 519 (1969).
There are dangers and difficulties in applying the harmless error rule. There is risk to the judicial process in substituting, to some degree, trial by appellate judges in place of trial by jury. See Traynor, op. cit., at 8, quoting Baron Parke in Crease v. Barrett, 1 C.M. & R. 919, 933, 149 Eng. Rep. 1353, 1359 (Ex. 1835), who observed that the application of a harmless error rule too generally would have the court "in a degree assume the province of the jury * * *." There is also difficulty in establishing a test of harmlessness that may accurately and uniformly be applied by reviewing courts. Our late Chief Justice Weintraub explored these problems in State v. Macon, supra, concluding that: "The circumstances are too infinite and the appellate judgment too laden with discretion to admit of formulary aid." 57 N.J. at 340. Also to be considered is the impact of the rule upon the discipline of trial judges. R.J. Traynor, former Chief Justice of the California Supreme Court, considered the effects of an appellate court's "sterilizing an error as harmless if there were a consequent risk that its own tolerance would in the long run weaken vigilance against error in the trial courts." The Riddle, supra at 80-81; see also Cameron and Osborn, "When Harmless Error Isn't Harmless," supra at 42.
Nevertheless, the harmless error rule is an old and important rule, embodied in case law as well as statutory provisions. Traynor, op. cit. at 4-15. R. 2:10-2 calls upon an *570 appellate court to disregard error "unless it is of such a nature as to have been clearly capable of producing an unjust result * * *." The rule is essential "to conserve judicial resources," but it must be applied with caution so as to assure "the vitality of the rules and procedures designed to assure a fair trial." Traynor, op. cit. at 81. See also Cameron and Osborn, "When Harmless Error Isn't Harmless," supra:
* * * The inquiry here is one of balancing the desirability of affirming the conviction of an obviously guilty defendant against the danger of deteriorating our procedural safeguards by ignoring their breach. [at 40]
There is enormous potential for prejudice in the improper admission of a defendant's prior convictions. Commentators have suggested that such error should be considered harmful per se. See The Riddle of Harmless Error, supra, where Chief Justice Traynor wrote:
The erroneous admission of evidence of other crimes also carries such a high risk of prejudice as ordinarily to call for reversal. [at 63; emphasis supplied]
See also, Mause, "Harmless Constitutional Error: The Implications of Chapman v. California," supra:
Prior convictions tend to have an incalculably potent impact on the minds of jurors, both because they are evidence of the defendant's criminal proclivities and therefore of the likelihood that he is guilty as charged, and because they can prejudice the jury against the defendant and lead them to convict him as a "bad man" regardless of the weight of evidence. [at 546]
Thus, Professor Mause recommends that "judicial economy" would dictate that a rule of "automatic reversal apply." Id. See also, Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319, 325 (1967), where the court speaks of the "inherently prejudicial" nature of evidence of a prior conviction (which is constitutionally infirm) to *571 the extent that the trial result cannot be saved by curative instructions to the jury to ignore such evidence.
In State v. Johnson, 65 N.J. 388, 391-392 (1974), the court held that defendant was deprived of a fair trial by a prosecutor's excessive reference in summation to defendant's prior criminal record to the point where the purpose appeared to demonstrate that defendant was a hardened criminal and that his current guilt could be inferred from his previous conduct. Recognizing that prior convictions were admissible to affect the credibility of a witness, the court nevertheless saw immense potential for prejudice where the jury was invited to consider the convictions for an improper purpose. The court pointed out (at 391): "Evidence of prior criminal convictions is admissible to affect the credibility of a defendant as a witness and for no other purpose." This potential for prejudice has encouraged repeated assaults upon the broad rule (N.J.S.A. 2A:81-12) that the credibility of a witness may be impaired by proof of his prior convictions. See State v. Johnson, supra, Pashman, J., concurring at 394-398. See also proposed Evid. R. 21 which would have made inadmissible proof of a defendant's conviction of a crime in a criminal proceeding for the purpose of impairing his credibility unless the defendant had first introduced evidence to support his credibility. (Evid. R. 21 was not adopted in any form.) We note also that in State v. Sands, 138 N.J. Super. 103, 108 (App. Div. 1975), certif. granted, 71 N.J. 345 (1976), the constitutionality of N.J.S.A. 2A:81-12 has been challenged, but this court considered itself bound by the holding in State v. Hawthorne, supra.
Accordingly, we conclude that the erroneous admission of defendant's 1965 convictions cannot be deemed harmless error in this case. The harmless error rule should not be carried so far as to substitute our view of defendant's guilt for his right to a fair and impartial trial by jury.
Finally we deal with the defendant's contention that the judge gave erroneous instructions to the jury on the *572 effect of his assertion of intoxication as a defense. State v. Del Vecchio, 142 N.J. Super. 359 (App. Div.), certif. den. 71 N.J. 501 (1976), held that voluntary intoxication to an extent that prevents defendant from forming the specific intent to steal is a defense to a charge of breaking and entering with intent to steal. The State argues that Del Vecchio conflicts with State v. Maik, 60 N.J. 203 (1972), a contention which was rejected in Del Vecchio at 361-362. We note, also, that at trial the prosecuting attorney said: "The State is certainly not going to oppose, if it is indeed raised, a defense of intoxication if there is evidence from the defense which would tend to support such a charge [to the jury]."
Acknowledging the rule in murder cases, established by State v. Maik, supra, the holding in State v. Del Vecchio is in accord with the prevailing rule in the vast majority of jurisdictions. Annotation, "Modern Status of the Rules as to Voluntary Intoxication as Defense to Criminal Charge." 8 A.L.R. 3d 1236, 1246 (1966). Where the State must prove the specific intent to steal, as well as an unlawful entry, voluntary intoxication "which precludes the formulation of the necessary intention, may be shown as a defense." Id.; Perkins, Criminal Law and Procedure (4 ed. 1972), c. 8, § 3 at 538; 1 Wharton, Criminal Evidence (13 ed. 1972), § 223 at 475-479. Accord: Model Penal Code § 2.08; the proposed New Jersey Penal Code § 2C:2-8(a), derived from the Model Penal Code, I Final Report of the New Jersey Criminal Law Revision Commission (1971) at 21 (intoxication is a defense if it negatives an element of the offense).
The State also contends that the evidence in this case was not sufficient to raise any reasonable doubt as to defendant's ability to form the specific intent to steal at the time of the offense, notwithstanding proofs offered as to his earlier inebriation. See State v. Ghaul, 132 N.J. Super. 438 (App. Div. 1975). In view of our disposition on the other-crimes evidence issue we will not anticipate what proofs *573 will be offered as to defendant's sobriety on the retrial. The issue will be for the trial judge to determine in the first instance.
Reversed and remanded for a new trial.
ALLCORN, J.A.D. (dissenting).
I would affirm the conviction of this defendant.
So plain is the evidence of his guilt that it admits of no doubt whatever. Defendant was apprehended in the home of his intended victims shortly after midnight. The lock on a basement window had been broken and the window was open; the door at the head of the stairs leading from the basement to the kitchen had been forced and broken open; a portable T.V. set and a portable clock, located in the kitchen, had been disconnected and moved to another room ready for removal. When apprehended, defendant said that he had entered the wrong house  mistakenly believing that it was the house of a girlfriend who lived next door, and that he had broken in so that the girlfriend's husband would not be aware that defendant was visiting her. An investigation of the neighborhood by the police failed to turn up any family bearing the name of the alleged girlfriend. Indeed, while at the scene defendant admitted to the victim that he "just wanted to take" the T.V. set.
During the trial, in an effort to negate the suggestion that defendant had entered the victim's home by inadvertence and to show that he had done so with intent to steal, the State offered into evidence public records establishing that previously, in 1965, defendant had twice been convicted of the commission of similar crimes  (1) entering without breaking, with intent to steal and (2) attempting to break and enter, with intent to steal. The evidence was admitted over defendant's objection, and the court gave the customary limiting charge to the jury regarding the restricted use of such evidence. Evid. R. 55 and 6.
Notwithstanding the manifest guilt of defendant, the majority of the court would reverse this conviction. It is their view that the trial judge committed error by admitting the *574 proofs of the other crimes into evidence. They argue that the evidence was of little probative force, particularly in view of its remoteness in time and, weighing this against the apparent lack of need for the evidence, the admission of the other-crimes evidence was unduly prejudicial and a mistaken exercise of discretion by the trial judge.
While the lapse of time between the current offense and the conviction of the prior similar offenses (nine years) may go to the weight to be given to the evidence, it does not render it inadmissible so long as it has some probative force and value. State v. Schuyler, 75 N.J.L. 487, 488 (E. & A. 1907). The prior offenses here do have considerable probative value on the question of whether the entry was inadvertent or for the purpose of committing a theft. Our own courts have held admissible without question evidence of similar offenses which occurred some ten years, eight years and five years previous to the instant charges, respectively, for the purpose of establishing intent or motive. State v. Schuyler, supra; State v. Donohue, 2 N.J. 381, 388 (1949); State v. Slocum, 130 N.J. Super. 358, 364 (App. Div. 1974). As succinctly stated by Chief Justice Gummere in State v. Schuyler, supra:
* * * the settled rule of the criminal law [is] that the remoteness of the time of such occurrence goes solely to their weight and not to their admissibility. Not only is this rule settled by the great weight of authority, but it prevails so universally in the administration of the criminal law that the diligence of counsel has not succeeded in discovering a single case where a contrary doctrine has been laid down. [at 488]
Schuyler was cited with approval by our present Supreme Court in State v. Donohue, supra.
The majority places great reliance on the cases of State v. Kociolek, 23 N.J. 400 (1957); State v. Raymond, 53 N.J.L. 260 (Sup. Ct. 1891), and State v. Putnam, 178 Neb. 445, 133 N.W.2d 605 (Sup. Ct. 1965). None, however, is apposite. In Kociolek the other crimes sought to be proved were not the same as or similar to that for which defendant was on *575 trial. There was no proof in Raymond that it was defendant who had committed the other alleged offenses, proof of which was sought to be offered into evidence. Finally, in Putnam, a case involving a charge of breaking and entering with intent to steal, there was no claim whatever by defendant that he broke and entered by accident or mistake, and thus had no intent either to break and enter or to steal. Thus, none of said cases satisfied the stated conditions and qualifications governing admissibility contained in Evid. R. 55.
The position of the majority that the other-crimes evidence should have been excluded also because it was unnecessary in the light of the other evidence of guilt, needs but a short answer. In light of the almost conclusive evidence of guilt (apart from the other crimes evidence), and even making the dubious assumption that it was error for the trial judge to admit the other-crimes evidence, the conclusion is unassailable that the error was completely harmless and could not have prejudiced defendant. State v. LaPorte, 62 N.J. 312, 318 (1973); United States v. Bloom, 538 F.2d 704 (5 Cir.1976), app. pending; State v. Fennell, 218 Kan. 170, 542 P.2d 686 (Sup. Ct. 1975).
Defendant urges a further ground for reversal. He contends that in light of the evidence of his intoxication, he was entitled to an instruction to the jury that if, by reason of intoxication he was incapable of forming an intent to steal, he must be acquitted, citing State v. Del Vecchio, 142 N.J. Super. 359 (App. Div. 1976), certif. den. 71 N.J. 501 (1976). In my view, the law on this issue was settled in State v. Maik, 60 N.J. 203 (1972)[1], holding that voluntary intoxication may reduce first degree murder to second degree murder if it rendered the defendant unable to conceive *576 and carry out a "willful, deliberate and premeditated killing," N.J.S.A. 2A:113-2, but that such intoxication is no defense to second degree murder, which itself requires proof of malice (i.e., intent). Thus, Maik stands for the proposition that voluntary intoxication is not a defense to any criminal charge  and this whether the offense be one involving the formation of a specific intent required in the definition of a particular offense or one involving a general intent. Chief Justice Weintraub set forth the proposition in Maik as follows:
It is generally agreed that a defendant will not be relieved of criminal responsibility because he was under the influence of intoxicants or drugs voluntarily taken. This principle rests upon public policy, demanding that he who seeks the influence of liquor or narcotics should not be insulated from criminal liability because that influence impaired his judgment or his control. The required element of badness can be found in the intentional use of the stimulant or depressant. Moreover, to say that one who offended while under such influence was sick would suggest that his sickness disappeared when he sobered up and hence he should be released. Such a concept would hardly protect others from the prospect of repeated injury. [at 214]
The decision of this court in Del Vecchio thus runs directly counter to the rule laid down in Maik. Until our Supreme Court has overruled Maik in this regard and has adopted a new and different principle of law, the rule enunciated by Maik is still controlling in this State. The circumstance that some other jurisdictions adhere to a different rule or that some writers disapprove of such rule is of no governing significance.
At all events, and even assuming that intoxication is a defense, there was not a scintilla of evidence in the record that would indicate the defendant was intoxicated in any degree at the time of the commission of the breaking and entry. Defendant himself did not take the stand, and so we have no evidence from his mouth concerning his asserted condition. He did produce three acquaintances, all of whom *577 testified that they had observed defendant in what they considered to be an intoxicated state in the afternoon or early evening that day, some 5 1/2 to 6 1/2 hours prior to the time defendant broke into the victims' home. Even absent the uncontroverted evidence of sobriety at the time of the commission of the offense, this evidence can hardly be considered as having any probative force bearing upon defendant's condition of sobriety 5 1/2 to 6 1/2 hours later. The jury could only have speculated as to the answer.
Quite obviously there was no need for speculation, or indeed no need to submit the issue to the jury, for the testimony of all the persons who were in contact with or who observed defendant at the time of the breaking and entry indicated that he was not then intoxicated but in full possession of his faculties. Although one officer detected an odor of alcohol on his breath, all of the persons testified that defendant walked, talked and otherwise acted and appeared normal  he talked normally, did not slur his speech and had no other difficulty speaking; he stood and walked normally and without difficulty; he did not sway, stumble or stagger when he walked and, despite having his hands handcuffed behind his back, he had no difficulty whatever in walking unassisted from the kitchen of the house, out and down seven or eight steps to the street, thence to the police car and into the back seat, again without assistance. Possible intoxication also is belied by the professional craftsmanship exhibited by the defendant in his ability to select the items to be stolen, the preparation of them for removal (disconnecting the T.V. set, recessing the aerial and winding the electric cord neatly around the handle), and assembling the items together in another room at a place easily accessible for removal, near a patio door opening off the den-dining room. In short, there was no proof evidencing intoxication at the time of the commission of the offense. In such circumstances, the issue of intoxication as a defense was properly excluded from consideration *578 by the jury. State v. Ghaul, 132 N.J. Super. 438 (App. Div. 1975).
For the foregoing reasons, I would affirm the conviction of this defendant.
NOTES
[1] See State v. Sempsey, 141 N.J. Super. 317, 323 (App. Div. 1976), holding that proof of the commission of a prior crime for the purpose of establishing identity of the perpetrator requires a showing of prior criminal activity so identical, unusual or distinctive as to "earmark the crime as defendant's handiwork" or "signature." See also, McCormick, Evidence (2 ed. 1972), § 190 at 449.
[2] See State v. Sempsey, cited in n. 1, supra.
[1] Although the determination in Maik with regard to the validity of the involuntary commitment standards in the event of acquittal by reason of insanity, was overruled in State v. Krol, 68 N.J. 236, 265 (1975), Krol did not touch upon or affect the issue of voluntary intoxication with which we are here dealing.