SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Angelina Nicole Carlucci (A-85-11) (069183)**

**Argued January 3, 2013 -- Decided March 13, 2014**

**RODRÍGUEZ, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

The issue in this appeal is whether inculpatory statements by defendant of other crimes, wrongs or acts were admissible pursuant to N.J.R.E. 404(b).

On October 7, 2008, defendant Angelina Nicole Carlucci was employed as an assistant manager at a restaurant in Greenwich.  According to another restaurant employee, Katie Lynn Briggs, around 2:30 p.m. a clear packet fell out of defendant's shirt.  Patricia Barlow, another employee, kicked the packet under the counter, retrieved it, and gave it to Briggs.  Briggs took the packet to the bathroom to examine it.  Finding that it contained "chunks of something," Briggs telephoned the general manager.  The police were contacted.  When Greenwich Township Detective Richard Hummer and Patrolman Steven Buss arrived, Briggs met them in the back parking lot and handed the packet to them.  The officers conducted a field test, which revealed that the packet contained cocaine.  Briggs told the police officers that defendant had dropped the packet.  Patrolman Buss then asked defendant to come into the manager's office located at the back of the restaurant and proceeded to question her.

Defendant was arrested and charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1).  Prior to trial, defendant challenged the admissibility of her statements to Patrolman Buss.  At a pretrial Jackson-Denno hearing on the admissibility of defendant's statements, Patrolman Buss testified that he showed the clear packet to defendant and asked "what is this," to which she replied that she "did not know."  Patrolman Buss then read defendant her Miranda rights and defendant, who was not handcuffed or otherwise restrained, indicated that she was willing to speak with him.  Patrolman Buss again asked defendant if she knew what the substance was and she replied that it was "crack," and that she knew this because she "had been in trouble for it in the past."  In addition, defendant stated that "the night prior she had drank alcohol and taken a Vicodin," and that the Vicodin was not legally prescribed.

The judge who conducted the Jackson-Denno hearing issued a written decision determining that defendant's statements to Patrolman Buss would be admissible at trial.  The judge found that Patrolman Buss' initial inquiries to defendant regarding the clear packet did not require prior Miranda warnings because the inquiry was merely investigatory at that stage.  The judge further found that Patrolman Buss read defendant her Miranda rights as soon as he "recognized that a sustained one-on-one questioning of [d]efendant in a back office was sufficiently coercive such that her continued detention rose to the level of a de facto arrest."  The judge also determined that defendant's post-Miranda statements were admissible:  "There is nothing in the record to indicate that [d]efendant's waiver was not knowing, intelligent, and voluntary."

A different judge presided at defendant's trial.  Before Patrolman Buss testified, defense counsel moved to suppress defendant's statements regarding her prior crack use.  The trial judge denied the motion on the basis that the objection was precluded by "the law of the case" doctrine based on the Jackson-Denno ruling and stated that an instruction limiting the use of this evidence would be given.  At the trial, Patrolman Buss' testimony differed from his pretrial Jackson-Denno hearing testimony.  At trial, he testified that defendant admitted that the substance in the clear packet that fell from her shirt was crack, before he read her the Miranda warnings.  Patrolman Buss' testimony was otherwise similar to that provided at the Jackson-Denno hearing.  Immediately after Patrolman Buss' testimony, and again prior to jury deliberations, the trial judge instructed the jury that defendant's statements could only be used as evidence of consciousness of guilt and not as proof that she had a propensity to commit crimes.

The jury found defendant guilty of third-degree possession of cocaine.  The trial judge denied defendant's motion for a new trial and imposed a one-year probationary term, subject to service of 270 days in the Warren

1

County Jail as a special condition of probation, pursuant to N.J.S.A. 2C:43-2b(2).

Defendant appealed. The Appellate Division affirmed, agreeing with the Jackson-Denno judge's determination that Patrolman Buss' initial questioning was investigatory. The appellate panel found that defendant was not in custody, that protections guaranteed by Miranda were not violated, and that defendant's post-Miranda statements were made knowingly, voluntarily, and intelligently. The panel rejected defendant's argument that her statements regarding her prior use of crack and Vicodin should have been excluded pursuant to N.J.R.E. 403 and 404(b). The panel concluded that the trial judge did not abuse his discretion by admitting the statements to show consciousness of guilt, along with a limiting instruction to the jury on two separate occasions.

The Supreme Court granted defendant's petition for certification. 209 N.J. 232 (2012).

**HELD**: The admission of evidence of defendant's other crimes, wrongs or acts was contrary to N.J.R.E. 404(b), and such admission constituted harmful error.

1. The admissibility of evidence of other crimes, wrongs or acts pursuant to N.J.R.E. 404(b) is subject to the four-prong test established in State v. Cofield, 127 N.J. 328, 338 (1992). The evidence must be "relevant to a material issue" that is genuinely disputed, "similar in kind and reasonably close in time to the offense charged," "clear and convincing," and "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." In this matter, only the first, third, and fourth Cofield prongs are applicable to the analysis. (pp. 13-15)

2. The first prong of Cofield requires that the evidence offered be "relevant to a material issue" that is genuinely disputed. Here the field test already had determined that the substance was cocaine. The identity of the substance as cocaine was not in dispute. Defendant's knowledge that the contents of the baggie was crack cocaine was not an issue necessary for the jury to resolve. Thus, this first response by defendant does not satisfy prong one of the Cofield test. Defendant's second response to the same question, that it appeared to be cocaine, was not admissible for any proper purpose under N.J.R.E. 404(b). It did not address a material issue in dispute and, further, defendant's knowledge that the substance appeared to be cocaine did not provide evidence of consciousness of guilt of present possession. Moreover, defendant's initial denial of knowledge of the baggie's contents was not a crime, and her recognition of the substance in the baggie as cocaine did not evidence her commission of a crime. At a minimum, this evidence was suggestive of defendant's propensity to use or possess drugs. That use was impermissible pursuant to N.J.R.E. 404(b). Similarly, defendant's admissions, in response to the patrolman's further questioning of prior use of crack cocaine, alcohol, and Vicodin are not relevant to the instant possession charge. (pp. 15-17)

3. The third prong of the Cofield test requires that "[t]he evidence of the other crime must be clear and convincing." Here, there is no evidence, other than Patrolman Buss' testimony about defendant's statement, that she last used crack cocaine two days before her arrest. This prong is not met here. Finally, the important fourth prong requires that "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Defendant's prior admissions of drug use are not relevant to any material issue in dispute. Even if they were, the minimal relevance would be substantially outweighed by the unfair prejudice. The statements may lead jurors to the conclusion that defendant must have possessed crack cocaine on this occasion because she has a propensity for having and using illegal substances generally and cocaine specifically. The evidentiary use of defendant's statements transgressed the prohibition against the use of other crime, wrongs, and bad acts evidence in N.J.R.E. 404(b). (pp. 17-18)

4. Defendant also raises several arguments about the voluntariness of incriminatory statements introduced into evidence at trial. In light of its holding that impermissible N.J.R.E. 404(b) evidence tainted this trial, the Court declines to address defendant's factual and legal arguments about 1) the timing of her Miranda warnings; and 2) whether she was subjected to custodial interrogation throughout her questioning by Patrolman Buss. However, when this matter is retried and if the prosecutor seeks to elicit defendant's response to Patrolman Buss' simple "What is this?" question, defendant may renew her request for a new Jackson-Denno hearing. Moreover, the record before the Court does not permit a proper review of the custodial nature of the place and manner of interrogation. In conclusion, the Court holds that the admission of evidence of defendant's other crimes, wrongs or acts was contrary to N.J.R.E. 404(b), and that such admission constituted harmful error. (pp. 19-22)

The judgment of the Appellate Division is **REVERSED**, defendant's conviction is **VACATED**, and the matter is **REMANDED** to the Law Division for new trial proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

ANGELINA NICOLE CARLUCCI,

    Defendant-Appellant.


Argued January 3, 2013 – Decided March 13, 2014

On certification to the Superior Court,
Appellate Division.

Susan Brody, Deputy Public Defender, argued
the cause for appellant (Joseph E. Krakora,
Public Defender, attorney).

Dit Mosco, Assistant Prosecutor, argued the
cause for respondent (Richard T. Burke,
Warren County Prosecutor, attorney).

JUDGE RODRÍGUEZ (temporarily assigned) delivered the opinion of the Court.

An inculpatory statement made by an accused prior to trial, and later introduced as evidence, may be very persuasive to a jury precisely because it comes from the mouth of the accused. In this appeal, defendant seeks reversal of a conviction for third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1), by challenging several such statements on various grounds. We reverse defendant's

1

conviction on the sole basis that statements that should have been excluded pursuant to N.J.R.E. 404(b) were admitted in her trial.

I.

A.

On October 7, 2008, defendant Angelina Nicole Carlucci was employed as an assistant manager at a restaurant in Greenwich. According to another restaurant employee, Katie Lynn Briggs, around 2:30 p.m. a clear packet fell out of defendant's shirt. Patricia Barlow, another employee, kicked the packet under a counter, retrieved it, and gave it to Briggs. Briggs took the packet to the bathroom to examine it. Finding that it contained "chunks of something," Briggs telephoned the general manager (who happened to be her sister, Erin) and hid the package in her sweater. The police were contacted. When Greenwich Township Detective Richard Hummer and Patrolman Steven Buss arrived, Briggs met them in the back parking lot and handed the packet to them. The officers conducted a field test, which revealed that the packet contained cocaine. Briggs told the police officers that defendant had dropped the packet. Patrolman Buss then asked defendant to come into the manager's office located at the back of the restaurant.

2

Patrolman Buss, who was the sole witness at an August 2009 pretrial Jackson-Denno[1] hearing on the admissibility of defendant's statements made to him during his questioning of her, testified as follows:

> [Assistant Prosecutor]: Okay. And at that time did you -- when you met with her, did you say anything to her when you first met with her?
>
> [Patrolman Buss]: Yes, I did.
>
> Q. What did you say?
>
> A. I asked her what -- I showed her the -- the substance in hand. I said what is this?
>
> Q. Okay. What did you believe it to be incidentally?
>
> A. We believed it to be crack cocaine.
>
> Q. And when you asked her that question, what did she say?
>
> A. She said that she did not know.
>
> Q. Okay. Did you say anything about whether it was hers or not?
>
> A. No. Not at the time.
>
> Q. At some point in time after asking that question did you provide her with her Miranda[2] rights?
>
> A. Yes, I did.

---

[1] Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Q. Can you tell the Court or describe for the Court how -- how you went about doing that at that time?

A. After I asked her that question, I took the Miranda card from my pocket, I read off each warning, she stated she understood, and stated she would speak with us.

Q. Do you have a -- an identical copy of the Miranda card you used that day with you today?

A. Yes, I do.

. . . .

Q. And did you ask her if she was willing to speak with you?

A. Yes.

Q. And what did she say?

A. She stated that she was willing.

Q. Can you describe any further -- well, before I go on there, who also was in the room at that time?

A. As I was reading it it was myself and Ms. Carlucci, and at the end of it, Detective Hummel was walking into the room.

Q. Now had Ms. Carlucci been handcuffed or restrained in any way at that point?

A. No.

Q. Okay.

. . . .

Q. While -- while they're at Perkin's, officer can you describe any further

4

conversation that you had with Ms. Carlucci about the substance of anything else?

A. I asked Ms. Carlucci what was going on. She stated that this substance that I had showed to her previously was found by someone that they were trying to get her in trouble. I then asked her what the substance was again, and she replied that it was crack.

Q. Did she indicate to you how -- make any statement to you regarding how she was able to identify the substance as crack?

A. Yes, she did.

Q. What did she say?

A. She stated that she had been in trouble for it in the past so she knew what it looked like.

Q. Did you ask her anything regarding when the last time she was -- that she used crack cocaine?

A. Yes, I did.

Q. And what was her response?

A. She said it was about two days ago.

Q. Did she offer any other information regarding any other substances she had used prior to you arriving at the Perkin's?

A. Yes, she did.

Q. And what did she say?

A. She said that the night prior she had drank alcohol and taken a Vicodin.

5

Q. Okay. Did she indicate to you whether or not the Vicodin was legally prescribed or not?

A. She said that it was not.

Q. At some point in time did you place her under arrest?

A. Yes.

Q. Did she make any other statements to you at that time prior to placing her under arrest?

A. No.

B.

Defendant was arrested and charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1). Prior to trial, defendant challenged the admissibility of her statements to Patrolman Buss. The judge conducted a Jackson-Denno hearing and issued a written decision determining that defendant's statements to Patrolman Buss would be admissible at trial. The judge found that Patrolman Buss' initial inquiries to defendant regarding the clear packet that had fallen out of defendant's shirt did not require prior Miranda warnings because the inquiry was merely investigatory at that stage. The judge commented that for purposes of the one initial question posed to defendant she was not in custody, noting that defendant held a managerial position with the restaurant and "presumably was familiar with the back office." That impression changed when the patrolman

6

testified at trial that he stood in front of the door to prevent defendant from attempting to leave. In a written opinion, the judge went on to find as follows:

> Initially, it seems that Patrolman Buss' questioning was akin to an investigative stop that was 'not so intrusive as to become a de facto arrest.' Therefore, this initial question to her did not require a Miranda warning. However, once Patrolman Buss got past this initial inquiry, he recognized that a sustained one-on-one questioning of [d]efendant in a back office was sufficiently coercive such that her continued detention rose to the level of a de facto arrest. As such, Patrolman Buss read [d]efendant her Miranda rights and had her sign a card indicating she understood her rights before he continued his questioning. There is nothing in the record to indicate that [d]efendant's waiver was not knowing, intelligent, and voluntary. Therefore, her [post-Miranda] statements are admissible.

A different judge presided at defendant's trial. Briggs, Barlow, Detective Hummer, and Patrolman Buss testified for the State. Before Patrolman Buss testified, defense counsel moved to suppress defendant's statements regarding her prior crack use. The trial judge denied the motion on the basis that the objection was precluded by "the law of the case" doctrine based on the Jackson-Denno ruling and stated that an instruction limiting the use of this evidence would be given.

At the trial, Patrolman Buss' January 2010 testimony differed from his pretrial Jackson-Denno hearing testimony. The

7

sequence of events was altered in respect to when <u>Miranda</u> warnings were given.  His testimony was as follows:

> Q.   And what, if anything, did you say to her at that time?
>
> A.   Um, I held up the suspected crack cocaine and asked what is this.
>
> Q.   Did she respond?
>
> A.   Yes.  She said that she didn't know.
>
> Q.   Did you ask her again what it was?
>
> A.   Yes.
>
> Q.   And what did she say?
>
> A.   The second time I asked her she said that it was crack.
>
> Q.   And after she told you that it was crack, what if anything did you do?
>
> A.   Um, at that time I Mirandized [sic] her.  I read her her <u>Miranda</u> warnings.

Thus, according to Patrolman Buss' trial testimony, defendant admitted that the substance in the clear packet that fell from her shirt was crack, <u>before</u> he read her the <u>Miranda</u> warnings.

Patrolman Buss also testified that defendant told him that "the substance [he] had show[n] to her previously was found by someone and that they were trying to get her in trouble." According to him, she explained that she was able to identify the substance as crack because she "had been in trouble for [crack cocaine] in the past so she knew what it looked like."

8

Patrolman Buss also asked her when she last used crack and she stated "about two days ago," adding that she also had used Vicodin, which was not prescribed to her, and alcohol the day before. There was no objection to this testimony.

Immediately after Patrolman Buss' testimony, the trial judge instructed the jury that the "proof of other crimes, wrongs, or acts" just offered by the State could only be used as "evidence of a consciousness of guilt on the defendant's part regarding the possession of CDS." The trial judge further instructed:

> You may not draw this inference unless you conclude that the acts alleged were an attempt by the defendant to cover up the crime being alleged. Whether this evidence does, in fact, demonstrate[] the defendant's consciousness is for you to decide . . . .
>
> [Y]ou may not use this evidence to decide that defendant had a tendency to commit crimes or that she is a bad person. That is, you may not decide that just because defendant has committed other wrongs or crimes, that [she] is guilty of the present crime. I will admit this evidence only . . . to help you decide the specific question . . . did she on this particular day have possession of this CDS? Did she possess the crack cocaine? You may not consider it for any other purposes and may not find the defendant guilty simply because the State has offered evidence that she may have used crack cocaine on other occasions.

Defendant presented no witnesses. Prior to deliberations, the trial judge again instructed the jury that defendant's

9

statements could only be used as evidence of consciousness of guilt and not as proof that she had a propensity to commit crimes.

The jury found defendant guilty of third-degree possession of cocaine. The trial judge denied defendant's motion for a new trial and imposed a one-year probationary term, subject to service of 270 days in the Warren County Jail as a special conviction of probation, pursuant to N.J.S.A. 2C:43-2b(2). This sentence was to run concurrent to the sentence imposed for the violation of probation on a 2006 conviction.

Defendant appealed. The Appellate Division affirmed, agreeing with the Jackson-Denno judge's determination that Patrolman Buss' initial questioning was investigatory, "an attempt to dispel or confirm suspicions that justify the detention." Patrolman Buss' initial question was not accusatory in nature, and "did not call for an admission of guilt and did not elicit any incriminating information." Furthermore, though defendant was "restrained" in the manager's office, she was not in custody. Thus, protections guaranteed by Miranda were not violated.

The panel also agreed with the finding that defendant's post-Miranda statements were made knowingly, voluntarily, and intelligently. Moreover, the panel rejected defendant's argument that her statements regarding her prior use of crack

and Vicodin should have been excluded pursuant to N.J.R.E. 403 and 404(b).  The panel concluded that the trial judge did not abuse his discretion by admitting the statements to show consciousness of guilt, along with a limiting instruction to the jury on two separate occasions.

This Court granted defendant's petition for certification. State v. Carlucci, 209 N.J. 232 (2012).

II.

Defendant contends that her conviction must be reversed because inadmissible statements were improperly introduced against her at trial.  Specifically, she argues that her statement identifying the contents of the baggie as crack was inadmissible because it was elicited by questioning in a custodial setting without the benefit of Miranda warnings.  Defendant asserts she was not free to leave because Patrolman Buss isolated her in the office, blocked the door with his body, and conveyed his suspicions that she was the owner of the CDS by asking her to identify it.  She argues that her post-Miranda statements also were inadmissible because Patrolman Buss engaged in a "question-first, warn-later" procedure.

Further, she argues that her statements identifying the baggie's contents as crack and referring to her prior drug use were inadmissible because, pursuant to N.J.R.E. 404(b), they constituted evidence of other crimes, wrongs, or acts and were

11

introduced for no valid evidentiary purpose.  Defendant argues that her "knowledge of the baggie's contents was not an issue in genuine dispute" and that it was improper to admit her initial denial of knowledge of the identity of the baggie's contents as evidence of consciousness of guilt.  She also argues that her reference to prior illegal drug use was sheer improper propensity evidence that served no legitimate evidentiary purpose pursuant to N.J.R.E. 404(b).  Further, she argues that the trial judge's limiting instruction exacerbated the harm because it "direct[ed] the jury to consider the evidence for the very purpose prohibited by N.J.R.E. 404(b)," namely, her guilt of the present possessory offense.

Finally, defendant argues that her statements should be suppressed because they were not recorded pursuant to Rule 3:17.

The State contends that defendant's statements were properly admitted because (1) she was neither in custody nor interrogated prior to being read Miranda warnings; (2) Patrolman Buss did not utilize a "question-first, warn-later" technique; and (3) defendant's statements were relevant to show consciousness of guilt.

The State argues that defendant was not in custody when Patrolman Buss questioned her, because a single officer interviewed her in her manager's office with an unlocked door.  Defendant also was not restrained, yelled at, or threatened in

12

any way.  The State asserts that Patrolman Buss asked defendant only one question before giving her Miranda warnings and that question was investigatory, not accusatory.  Thus, defendant was not subjected to custodial interrogation.

The State also argues that defendant's admission that she knew the substance was crack was not incriminating.  Defendant was not asked whether the cocaine belonged to her before hearing the Miranda warnings, and after she was warned, she denied ownership.  Thus, Patrolman Buss did not use a "question-first, warn-later" technique.

The State concedes that, although a N.J.R.E. 104(a) hearing was not held, the Jackson-Denno hearing was an equivalent proceeding.  The State argues defendant's statements regarding her prior drug use were properly admitted to show that defendant "knew, because of her prior usage, the substance was crack and she knew it was illegal . . . and therefore, she did not possess it by accident."  The State argues that the information revealed her consciousness of guilt because she initially denied knowing what the substance was, but then later admitted she knew it was crack cocaine based on her prior usage.

### III.

### A.

We first address defendant's arguments that her statements to Patrolman Buss about her prior unrelated use of crack cocaine

13

and other substances, as well as her identification of the baggie's contents as appearing to be cocaine were inadmissible pursuant to N.J.R.E. 404(b) and should have been excluded from trial.

N.J.R.E. 404(b) provides:

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

The Court in State v. P.S., 202 N.J. 232, 255 (2010), noted that "[b]ecause N.J.R.E. 404(b) is a rule of exclusion rather than a rule of inclusion," the proponent of evidence of other crimes, wrongs or acts must satisfy a four-prong test. In State v. Cofield, 127 N.J. 328, 338 (1992), this Court set forth a four-prong test governing the admissibility of evidence pursuant to N.J.R.E. 404(b). The Cofield test requires that:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

14

[Ibid. (citing Abraham P. Ordover, Balancing The Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989) (footnote omitted)).]

We have recognized that the second prong does not have universal applicability in a N.J.R.E. 404(b) analysis.  See State v. Williams, 190 N.J. 114, 131 (2007).  In this matter, the first, third, and fourth Cofield prongs are applicable to the analysis.  We turn therefore to the application of that test.

B.

The first prong of Cofield requires that the evidence offered be "relevant to a material issue" that is genuinely disputed.  Cofield, supra, 127 N.J. at 338.  The State argues that defendant's remarks that she has been in trouble for using crack cocaine in the past, and that she used cocaine two days before, are relevant to her consciousness of guilt because she initially denied knowing what the substance in the baggie held before her was.  Her initial denial, the State argues, can be construed as an attempt to cover up the current possessory crime.  However, this argument fails for the evidence is simply not relevant to a genuine issue in dispute.

Here the field test already had determined that the substance was cocaine.  The identity of the substance as cocaine was not in dispute.  Defendant's initial response to the

15

question "what is this" was "I don't know." Defendant's knowledge that the contents of the baggie dangled in front of her was crack cocaine was not an issue necessary for the jury to resolve. Thus, this first response by defendant does not satisfy prong one of the Cofield test.

Undoubtedly, the officer asked defendant the question "what is this" twice, hopeful that she would acknowledge the baggie as hers, but she simply responded to his second inquiry that it appeared to be cocaine. That second response was not admissible for any proper purpose under N.J.R.E. 404(b). It did not address a material issue in dispute and, further, her knowledge that the substance appeared to be cocaine did not provide evidence of consciousness of guilt of present possession. To the extent that the trial court admitted her responses as evidence of consciousness of guilt, we disagree. Clearly, a suspect's words or actions "subsequent to the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence or tend to establish intent are relevant and admissible." State v. Rechtschaffer, 70 N.J. 395, 413 (1976). However, her initial denial of knowledge of the baggie's contents was not a crime. Furthermore, her recognition of the substance in the baggie as cocaine, which had not yet been attributed to her by Patrolman Buss, did not evidence her commission of a crime. At a minimum, this evidence was

16

suggestive of defendant's propensity to use or possess drugs. That use was impermissible pursuant to N.J.R.E. 404(b).

Moreover, defendant's admissions, in response to the patrolman's further questioning of prior use of crack cocaine, alcohol, and Vicodin similarly are not relevant to the instant possession charge. The State argues that defendant's admissions of prior use are relevant because they prove that she knew -- because she would know as a prior user -- the substance was crack cocaine. However, defendant did not dispute that the substance field tested as crack cocaine. She claimed that her statements to Patrolman Buss should have been suppressed and that there was no proper purpose for their admission. She did not testify in this matter or present any witnesses in defense. The burden was on the State to prove all elements of the possessory offense for which defendant was charged. In that context, because the fact that the substance in the baggie was crack cocaine was not in dispute, her statements of prior use should not have been admitted for the proffered purpose. Nor can they be admitted to further bootstrap an argument of consciousness of guilt.

The third prong requires that "[t]he evidence of the other crime must be clear and convincing." Cofield, supra, 127 N.J. at 338. Here, there is no evidence, other than Patrolman Buss'

17

testimony about defendant's statement, that she last used crack cocaine two days before her arrest. This prong is not met here.

Finally, the important fourth prong requires that "[t]he probative value of the evidence must not be outweighed by its apparent prejudice." Ibid. The State has not demonstrated that defendant's statements were admissible for a purpose permitted by N.J.R.E. 404(b). Defendant's prior admissions of drug use are not relevant to any material issue in dispute. Even if they were, the minimal relevance would be substantially outweighed by the unfair prejudice. The statements that defendant admitted to prior crack cocaine use and to using crack cocaine, alcohol, and Vicodin two days prior to the incident at the restaurant may lead jurors to the conclusion that defendant must have possessed crack cocaine on this occasion because she has a propensity for having and using illegal substances generally and cocaine specifically. That is precisely the sort of reason for which N.J.R.E. 404(b) evidence cannot be introduced.

We conclude, therefore, that the evidentiary use of these statements by defendant transgressed the prohibition against the use of other crime, wrongs, and bad acts evidence in N.J.R.E. 404(b).

IV.

18

Defendant also raises several arguments about the voluntariness of incriminatory statements introduced into evidence at trial.

The admissibility of a suspect's statements to police is governed by familiar principles. In order to safeguard a suspect's Fifth Amendment right against self-incrimination, the United States Supreme Court in Miranda v. Arizona, established specific warnings that must be given to the suspect. Miranda, supra, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706-07. Miranda "warnings must be given before a suspect's statement made during custodial interrogation [may] be admitted in evidence." Dickerson v. United States, 530 U.S. 428, 431-32, 120 S. Ct. 2326, 2329, 147 L. Ed. 2d 405, 412 (2000). A "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, supra, 384 U.S. at 444, 86 S. Ct. at 1612, 16 L. Ed. 2d at 706. Failure to give Miranda warnings to a suspect prior to custodial interrogation "creates a presumption of compulsion," warranting suppression of any statements made. Oregon v. Elstad, 470 U.S. 298, 307, 105 S. Ct. 1285, 1292, 84 L. Ed. 2d 222, 231 (1985).

Whether or not a person is in custody is an objective determination, based on "how a reasonable [person] in the

19

suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317, 336 (1984); see also State v. P.Z., 152 N.J. 86, 103 (1997) (explaining determination of custody is "based on the objective circumstances"). Moreover, "'custody in the Miranda sense does not necessitate a formal arrest . . .'" P.Z., supra, 152 N.J. at 103 (quoting State v. Lutz, 165 N.J. Super. 278, 285 (App. Div. 1979)). "The critical determinant of custody is whether there has been a significant deprivation of the suspect's freedom of action based on the objective circumstances, including the time and place of the interrogation, the status of the interrogator, the status of the suspect, and other such factors." Ibid. Thus, a suspect may be in custody in various environments, including one's own home or a public place, and with or without physical restraints. Ibid.

In light of our holding that impermissible N.J.R.E. 404(b) evidence tainted this trial, we decline to address defendant's factual and legal arguments about 1) the timing of her Miranda warnings; and 2) whether, as defendant asserts, she was subjected to custodial interrogation throughout her questioning by Patrolman Buss and uttered incriminating statements both prior to receiving those warnings and afterward, implicating concerns about question-first, warn-later situations. Suffice it to say that this Court has spoken on the analysis to be

20

applied for the latter issue raised by defendant. See State v. O'Neill, 193 N.J. 148, 180 (2007) (establishing standards regarding admissibility of successive inculpatory statements in "question-first, warn-later" instances). However, when this matter is retried and if the prosecutor seeks to elicit defendant's response to Patrolman Buss' simple "What is this?" question, defendant may renew her request for a new Jackson-Denno hearing. We cannot rely on the Jackson-Denno hearing judge's factual findings and analysis in light of the significant factual difference in the patrolman's testimony at the pre-trial hearing and at trial, and the important role that those facts, as understood by the Jackson-Denno hearing judge, played in that court's scrutiny of the custodial interrogation issue. It necessarily affects the validity of the constitutional analysis that led to the denial of the motion to suppress defendant's statements. Moreover, the present status of the record makes review of the custodial nature of the place and manner of interrogation not possible on this appellate record.

V.

Therefore, we hold that the admission of evidence of defendant's other crimes, wrongs or acts was contrary to N.J.R.E. 404(b), and that such admission constituted harmful error. Defendant's conviction is vacated and the matter is

21

remanded to the Law Division for new trial proceedings consistent with this opinion.

    CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE CUFF (temporarily assigned) join in JUDGE RODRÍGUEZ's opinion.

22

SUPREME COURT OF NEW JERSEY

NO.    A-85                           SEPTEMBER TERM 2011

ON CERTIFICATION TO     Appellate Division, Superior Court



STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

ANGELINA NICOLE CARLUCCI,

        Defendant-Appellant.



DECIDED            March 13, 2014
                Chief Justice Rabner              PRESIDING
OPINION BY          Judge Rodríguez
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE/ VACATE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1