**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1252-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMAR T. JENKINS, a/k/a
JAMAR JENKINS, ROCK,
JAY ROCK, TURELL
BLANDING, and JAMES
JENKINS,

     Defendant-Appellant.

_____

Submitted February 6, 2019 – Decided September 26, 2019

Before Judges Ostrer and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-10-3023.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Maura Murphy Sullivan, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

A jury found defendant Jamar Jenkins guilty of third-degree terroristic threats, N.J.S.A. 2C:12-3(a); third-degree stalking in violation of a court order, N.J.S.A. 2C:12-10(c); fourth-degree stalking, N.J.S.A. 2C:12-10(b); fourth-degree domestic violence contempt, N.J.S.A. 2C:29-9(b); and petty disorderly persons harassment, N.J.S.A. 2C:33-4(a), as a lesser-included offense of a separate terroristic threat charge. The victim was defendant's former girlfriend, M.P., with whom he had a young child. As a persistent offender, he received an aggregate sentence of thirteen years, including an eight-year extended term for third-degree stalking, consecutive to a five-year term for making a terroristic threat.

On appeal, defendant contends in his counseled brief that the trial judge wrongly admitted Rule 404(b) evidence that defendant engaged in prior alleged acts of domestic violence, and that he carried a handgun. He also challenges his sentence as excessive, and argues the court abused its discretion in imposing consecutive terms.

We find merit in the first argument, but not the second. We agree that the State did not present clear and convincing evidence of the prior bad acts, as required by the test for admissibility in State v. Cofield, 127 N.J. 328, 338 (1992). The State relied on the alleged victim's hearsay, conveyed by a police officer who lacked personal knowledge of the alleged acts. Under the circumstances, this did not satisfy the rigorous standard of proof that Cofield established.

As for the sentencing, we recognize that the terroristic threat was consistent with, and related to the course of conduct that gave rise to the stalking conviction. But, it was a distinct and exacerbating offense. The trial judge appropriately exercised his discretion under State v. Yarbough, 100 N.J. 627 (1985), in imposing consecutive sentences.

In a pro se supplemental brief, defendant raises four additional arguments. They either have no merit, or should be raised first before the trial court.

## I.

Defendant's relationship with M.P. ended around the beginning of 2015. He was disturbed that M.P. had begun seeing another man. According to M.P.'s testimony at trial, defendant engaged in a course of conduct and made threats in 2015 that formed the basis of the legal charges against him. Third-party

witnesses attested to some of defendant's actions, but not the most egregious ones. The State bolstered its case with testimony of defendant's prior bad acts.

A.

At a pre-trial hearing, the State sought approval to introduce at trial evidence about four alleged prior bad acts: in November 2014, defendant kicked and damaged M.P.'s front door; in December 2014, defendant threw a rock through M.P.'s window; at an unspecified time and place, defendant choked her; and defendant carried a silver handgun, which he once displayed to M.P.[1]

The State's sole witness at the hearing was a police officer, who recounted what M.P. told him on two separate occasions in 2015 about the alleged earlier incidents. He referred to a written complaint that M.P. filed in November 2014, reporting that someone – she did not name defendant – had damaged her front door while she was not home. The officer testified that M.P. alleged that defendant later admitted in a phone call that he damaged the door. According to the officer, M.P. asserted that defendant said he would do it again if M.P. had another man in her house.

---

[1] The State unsuccessfully sought permission to introduce evidence of a fifth incident in October 2014, involving defendant's alleged taking of M.P.'s property. Defendant apparently visited the home, in the company of a police officer and apartment manager, to retrieve his own property. That incident is not before us.

The officer also said that M.P. told him about the December 2014 rock-throwing incident. Again, M.P. was not at home. In her report to police immediately following the incident, M.P. did not accuse defendant. The officer testified that M.P.'s neighbor witnessed the event, although the neighbor actually spoke to a different officer.

The officer also testified that in his second interview with M.P., she disclosed defendant's handgun possession, stating "she had known him to have a handgun" and she saw him with it "at one point." She said he carried the handgun if he was in a bar, or with friends, but not if he was "just selling drugs" near his residence. The officer also stated that M.P. asserted that defendant had choked her in the past, but did not say when or where.

Defense counsel contended that the prior bad act evidence was inadmissible. Counsel argued that the State was relying on hearsay, in some cases double and triple hearsay. The prosecutor responded that hearsay was admissible at the hearing, and the officer was permitted to "testify as to what [M.P.] said. So, it's as if she was testifying."

Applying Cofield, the court rejected the defense arguments and found that the evidence of the four incidents was relevant to material issues at trial, similar in kind or reasonably close in time to the charged offenses, the proof of the acts

A-1252-17T4

was clear and convincing, and the apparent prejudice did not outweigh the probative value of the evidence.

With respect to the standard of proof, the trial judge credited M.P. as if she had testified at the hearing. Referring to the door incident, the judge stated, "The testimony by [M.P.] . . . the victim, herself, is adequate to establish by clear and convincing evidence that the defendant committed that act . . . ." Regarding gun possession, the judge also appeared to shift the burden to defendant, stating, "The testimony of the victim is more than sufficient to establish the fact [of gun possession] by clear and convincing evidence, particularly where there's no other factors or evidence placing those observations into question." As for the rock-throwing incident, the court found the evidence clear and convincing based on the neighbor's anticipated testimony. Regarding evidence of the alleged choking, the court found it admissible based on a "similar analysis to that of the gun."

B.

At trial, M.P. described a course of conduct in 2015 that included threats, interference with her employment, disclosure of an intimate recording, and new incidents of damage to her property. M.P. testified that one day in February 2015, while M.P. was at her sister's home, defendant parked his car nearby and

6

called M.P. on the phone. Upset that M.P. had recently moved in with another man, defendant told M.P. that he was going to kill her and her whole family. He said he had nothing to lose and he did not want his son around another man. Consistent with the court's pre-trial ruling, M.P. said that defendant had a silver handgun at the time, because she "saw it before."

M.P. testified defendant also posted on social media a video of M.P. that he had taken when they were together. The video showed M.P. naked, getting dressed in a bedroom, in the presence of the couple's baby. The dissemination of the video led to the temporary removal of M.P.'s four children by the Division of Child Protection and Permanency.[2] The video was also a source of embarrassment to M.P. and her older children.

Defendant tried to get M.P. fired from her job as a home health aide. M.P. had recorded one of her clients being verbally abusive to her. Defendant believed that recording a client violated M.P.'s conditions of her employment. Having access to the cell phone containing the recording, defendant presented the recording to M.P.'s supervisor, and urged her to take action against M.P. The supervisor testified at trial that she was already aware of the recording; and

---

[2] The record before us does not explain the grounds for the removal, but we do not presume that a mother dressing in the presence of an infant was grounds by itself to remove children from the home.

A-1252-17T4

under the circumstances, she had no intention of disciplining M.P. According to the supervisor, defendant had said that M.P. was "messing up his life, so he wanted to mess up hers."

Around April 28, 2015, defendant called M.P. numerous times from anonymous numbers. Most times, she refused to answer. When she did, the two would argue. Once, defendant called M.P. while she was in a courthouse. He told her to drop the charges or there would be an issue. During a call to M.P. while she was visiting her sister, defendant threatened to damage her house and kill her and her family. M.P. later found her home vandalized. M.P. claimed that defendant admitted responsibility, but later recanted.

On May 23, 2015, defendant went to M.P.'s home and started kicking the door. M.P. testified that she was at home but chose to remain inside until defendant left. Later that day, M.P.'s neighbor told her that she saw defendant kick the door. The neighbor testified to the incident at trial, as well as the prior rock-throwing incident. The neighbor testified that M.P. was not at home when defendant kicked the door.

M.P. testified that these incidents were very upsetting and made her afraid. She said, "I mean, you don't know what this man is going to do. There's multiple threats. There's home visits." M.P. did not testify to a choking incident,

A-1252-17T4

notwithstanding the officer's testimony at the pre-trial hearing.  Rather, she stated, "There's beating me up, and ambulance [sic].  There's a lot going on at the time."  She said it was going to continue until "someone put a stop to it."

C.

The jury acquitted defendant of a terroristic threat to kill, N.J.S.A. 2C:12-3(b), arising out of the February 2015 incident; and found defendant guilty instead of harassment.  However, the jury convicted defendant of a terroristic threat of violence, N.J.S.A. 2C:12-3(a), arising out of the April 2015 incident.  The jury also found defendant guilty of fourth-degree stalking, N.J.S.A. 2C:12-10(b), for the course of conduct between February 13 and May 23, 2015.  After the verdict on those charges, the State introduced evidence that a restraining order was in place between February 13 and March 2, 2015.  The jury then found defendant guilty of third-degree stalking in violation of a restraining order, N.J.S.A. 2C:12-10(c); and fourth-degree contempt, N.J.S.A. 2C:29-9.

D.

At the sentencing hearing, M.P. partially recanted her trial testimony.  She stated she was compelled to testify.  She alleged that the prosecutor urged her to say defendant had a gun, and if she did not comply, it would affect her ability to see her children.  "I lost my kids before, Your Honor.  I did not want to lose

9

them again." She said, "Him having a gun is a lie." She also said, "He did not threaten to kill me." She confirmed her testimony about going to her workplace. She added, "Did he break the windows, the doors? As I stated before, I did not see him. The witness stated that she did." As for the social media posting, she said, "Everything else that he did, naked pictures on the internet, that is the truth. But, him having a weapon, on my god, on my kids, he did not."

She said she did not want her son to suffer the hardship of his father's incarceration. She said she had forgiven defendant. "Everything he did, I forgave him for it. He did do it. But, with the gun and threatening me, Your Honor, he did not."

The judge acknowledged that M.P. testified pursuant to a material witness subpoena, and he had issued a warrant for her arrest because she had failed to comply. After hearing M.P.'s statement, the judge stated he would move forward with sentencing, stating "the convictions were not based on possession or a lack of a possession of a gun." The judge stated, "[E]verything [M.P.] said, quite frankly, supports the crimes for which this defendant has been convicted." Defense counsel disputed the point but did not move for a new trial. The judge did not directly address M.P.'s plea for leniency.

The court granted the State's motion for a persistent-offender extended term, N.J.S.A. 2C:44-3(a), based on defendant's 2011 and 2006 convictions for possession of a firearm while committing a CDS offense and aggravated arson. The court found aggravating factors three (risk of reoffending); six (extent of prior record and offense seriousness); nine (need to deter); and fifteen (involved act of domestic violence). N.J.S.A. 2C:44-1(a)(3), (6), (9), and (15). The court noted that defendant also had prior convictions for burglary, in 1998, and weapons violations, in 2002; a juvenile adjudication for terroristic threats; and numerous municipal court encounters. The court rejected the defense suggestion of various mitigating factors, except factor eleven, hardship on his child, N.J.S.A. 2C:44-1(b)(11). The court observed that defendant was a violent man and a lengthy sentence was justified to protect the victim and the public. The court concluded the aggravating factors substantially outweighed the mitigating factors.

The court imposed an extended term of eight years on the third-degree stalking count. With the State's urging, the court merged the fourth-degree stalking count into the third-degree count, notwithstanding that the former covered a longer period of time than the latter. The prison terms on the remaining counts – five years on terroristic threats, eighteen months on

11

contempt, and thirty days on harassment – were to be served concurrently with each other, but consecutively to the eight-year term. In support of the consecutive terms, the court noted that the terroristic threat occurred in April 2015, after the February-to-March course of conduct that formed the basis of the third-degree stalking charge. Although the harassment – as a lesser included offense – occurred within the February-to-March range, the court noted it was "separate and distinct" from the fear caused by the stalking course of conduct.

E.

On appeal, defendant raises the following arguments in his counseled brief:

POINT I

THE TRIAL COURT ERRED IN PERMITTING THE STATE TO ADMIT SEVERAL PRIOR UNCHARGED BAD ACTS ALLEGEDLY COMMITTED BY DEFENDANT. BECAUSE THE EVIDENCE WAS NOT PROPERLY ADMISSIBLE FOR ANY ENUMERATED PURPOSE UNDER N.J.R.E. 404(B), IT SHOULD NOT HAVE BEEN ADMITTED.

A. THE NOVEMBER AND DECEMBER 2014 INCIDENTS.

B. DEFENDANT'S ALLEGED PRIOR POSSESSION OF A HANDGUN AND THE CHOKING INCIDENT.

A-1252-17T4

DEFENDANT'S SENTENCE IS MANIFESTLY
EXCESSIVE AND MUST BE REDUCED.

We discern four additional issues from defendant's supplementary pro se brief. He argues: his right to be present at trial was violated; he was denied a fair trial and due process because M.P. partially recanted her testimony; his defense counsel had a conflict of interest because he was in a relationship with the case's initial prosecutor; and his counsel was ineffective because defendant was not properly advised regarding his extended term exposure during the plea negotiations.

## II.

We start with the admissibility of the prior-bad-act evidence. We review the trial court's decision to admit N.J.R.E. 404(b) evidence under the abuse of discretion standard. State v. Erazo, 126 N.J. 112, 131 (1991). If the evidence was improperly admitted, it must still survive harmless error analysis. There must be "a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

Rule 404(b) is a rule of exclusion. State v. Green, 236 N.J. 71, 84 (2018). To be admissible, other-crimes-or-wrongs evidence must satisfy four prongs:

(1) The evidence of the other crime must be admissible as relevant to a material issue;

(2) It must be similar in kind and reasonably close in time to the offense charged;

(3) The evidence of the other crime must be clear and convincing; and

(4) The probative value of the evidence must not be outweighed by its apparent prejudice.

[Cofield, 127 N.J. at 338 (quoting Abraham P. Ordover, Balancing The Presumptions of Guilt And Innocence: Rules 404(b), 608(b), And 609(a), 38 Emory L. J. 135, 160 (1989)).]

Although defendant challenges the court's findings as to all four prongs, we find merit only in his contention that the State failed to present clear and convincing evidence of the prior incidents involving rock throwing and door damage; gun possession; and choking.  In particular, the facts that defendant possessed and displayed a gun and previously assaulted M.P. were relevant to material issues, including (1) whether defendant's later actions occurred "under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out," N.J.S.A. 2C:12-3(b) (terroristic threats), and (2) whether his course of conduct would "cause a reasonable person to fear for his [or her] safety . . . or suffer other emotional distress," N.J.S.A. 2C:12-10(b) (stalking).  The prior rock throwing and door

14

damage incidents were also relevant to the issue whether defendant engaged in the later behavior with the purpose or knowledge it would cause fear or emotional distress.

Because of the prejudicial nature of other crimes and wrongs evidence, our Court has adopted the "clear and convincing" standard of proof, to assure that such evidence is admitted only upon firm proof that the party actually committed the other crime or wrong. "'Because of the high probability of prejudice from the admission of prior bad acts, the court must ensure that the evidence against the defendant directly establishes "that the defendant took part in the collateral act . . . ."'" State v. Hernandez, 170 N.J. 106, 123 (2001) (quoting State v. Terrazas, 944 P.2d 1194, 1198 (Ariz. 1997) (citation omitted)). The standard of proof is closely related to the balance between the probative value of the evidence and its prejudicial nature. "[T]he evidence has low probative value if the clear and convincing proof standard is not satisfied." Ordover, 38 Emory L. J. at 164.

"[T]he third prong of our Cofield test requires that the judge serve as a gatekeeper to the admission of other-crime evidence." Hernandez, 170 N.J. at 123. A judge may not abdicate that gatekeeping role by leaving to the jury the

threshold determination whether the prior crime or wrong actually occurred. State v. Sheppard, 437 N.J. Super. 171, 201 (App. Div. 2014).

The standard of proof is demanding. Clear and convincing evidence "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable (the factfinder) to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." In re Samay, 166 N.J. 25, 30 (2001) (quoting In re Boardwalk Regency Corp., 180 N.J. Super. 324, 339 (App. Div. 1981) (internal quotation marks and citation omitted)). We recognize that the standard may be "satisfied by uncorroborated testimonial evidence." In re Samay, 166 N.J. at 30. We also recognize that hearsay is admissible in a pretrial hearing to determine the admissibility of other-crimes evidence. See N.J.R.E. 104(a). However, the issue before us is not the admissibility of M.P.'s hearsay statements – conveyed by the officer and memorialized in various reports. The issue is the persuasiveness of such hearsay, which is uncorroborated by any other evidence except – to a limited extent – the double hearsay of a neighbor to another officer, untested by cross-examination or the court's assessment of the speaker's demeanor.

Hearsay is generally considered "untrustworthy and unreliable" if it does not satisfy one of the exceptions which are "created out of necessity and . . . justified on the ground that 'the circumstances under which the statements were made provide strong indicia of reliability.'" State v. White, 158 N.J. 230, 238 (1999) (quoting State v. Phelps, 96 N.J. 500, 508 (1984)). Hearsay is generally barred "to ensure the accuracy of the factfinding process by excluding untrustworthy statements, such as those made without the solemnity of the oath, and not subject to cross-examination by the accused or the [fact-finder's] critical observation of the declarant's demeanor and tone." State v. Engel, 99 N.J. 453, 465 (1985). Hearsay may suffer from failures of perception, memory, and narration. See Neno v. Clinton, 167 N.J. 573, 579 (2001) (citing McCormick on Evidence § 245 (5th ed. 1999)). Hearsay's inherent limitations are not transformed simply because it is admissible in a pre-trial hearing under N.J.R.E. 104(a).

Inadmissible hearsay does not suffice to prove other crimes or wrongs at trial. See State v. Ingenito, 87 N.J. 204, 224 (1981) (Schreiber, J., concurring) (stating that "proof of the other crime should be direct evidence of that crime, not hearsay"); see also Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 8(c) on N.J.R.E. 404 (2019). In State v. Carlucci, 217 N.J. 129

(2014), the Court reversed a trial court's determination, in a prosecution for simple cocaine possession, to admit evidence that the defendant previously used the drug. The only evidence of the defendant's prior use was an officer's testimony that defendant admitted such use. The Court noted, "Here, there is no evidence, other than Patrolman Buss's testimony about defendant's statement, that she last used crack cocaine two days before her arrest." Id. at 143. The Court concluded that the "clear and convincing" prong was not met. Ibid.

Other jurisdictions that have adopted the "clear and convincing" standard have likewise questioned whether proof of other crimes or wrongs may consist solely of hearsay. The Tennessee Supreme Court, for example, recognized "that inadmissible hearsay is insufficient to establish a prior bad act under Rule 404(b)." State v. Sexton, 368 S.W.3d 371, 405 (Tenn. 2012); see also State v. Pullens, 800 N.W.2d 202, 222 (Neb. 2011).

In this case, the trial court credited M.P.'s statements, and those of a neighbor, without the opportunity to assess the witness's demeanor, and without the benefit of cross-examination. The most damning prior acts – the gun possession and prior choking – were also the most questionable. They lacked detail as to time and place. M.P. alleged in 2015, upon police questioning, that defendant possessed a weapon and once displayed it to her; yet, she apparently

18

never mentioned that in connection with her 2014 reports. Likewise, she apparently never reported the choking incident, although she reported damage to her front door and window.

The trial court erred in treating M.P.'s hearsay statements as the equivalent of in-court testimony, as the statements were stripped of the basic in-court tests of reliability – assessment of demeanor and cross-examination. M.P.'s recantation at sentencing about defendant's gun possession only heightens doubts that the State would have been able to meet the third Cofield prong, had defense counsel had the opportunity to challenge her assertions outside the jury's presence.

In sum, the record lacked sufficient credible evidence for the court to conclude, by clear and convincing evidence, that defendant committed the prior crimes or wrongs alleged.

We also reject the State's argument that any error in admitting the 404(b) evidence was harmless. An error is harmless if "any prejudice to defendant was not such that created a real possibility that the jury arrived at a result it otherwise might not have reached." State v. Marrero, 148 N.J. 469, 492-93 (1997). "[W]e focus on 'whether in all the circumstances there was a reasonable doubt as to

whether the error denied a fair trial and a fair decision on the merits.'" State v. Kemp, 195 N.J. 136, 149 (2008) (quoting Macon, 57 N.J. at 338)).

Noting the inherently prejudicial nature of other-crimes-and-wrongs evidence, the Supreme Court has cautioned against overuse of the harmless error doctrine involving the wrongful admission of such evidence:

> This Court has sought to prevent overuse of the "harmless error" doctrine . . . . For this reason, the rule of harmless error should be summoned only with great caution in dealing with the breach of fundamental procedural safeguards "designed to assure a fair trial." "There is widespread agreement that other-crime evidence has a unique tendency to turn a jury against the defendant. The likelihood of prejudice is acute when the proffered evidence is proof of a defendant's uncharged misconduct."
>
> [State v. G.V., 162 N.J. 252, 262 (2000) (first citation omitted; second citation quoting State v. Stevens, 115 N.J. 289, 302 (1989)).]

Rejecting a claim of harmless error, the Court in G.V. stated, "Nothing could be more prejudicial than the erroneous admission of such testimony." G.V., 162 N.J. at 261. "The erroneous admission of evidence of other crimes . . . carries such a high risk of prejudice as ordinarily to call for reversal." Id. at 262 (quoting State v. Atkins, 151 N.J. Super. 555, 570 (App. Div. 1977), rev'd on other grounds, 78 N.J. 454 (1979)).

A-1252-17T4

Given the highly prejudicial nature of the other-crimes-and-wrongs evidence in this case, we cannot find, beyond a reasonable doubt, that the jury's verdict was unaffected – particularly by the evidence of defendant's alleged gun possession and his alleged prior assault. Both incidents tarred defendant as a violent man, prepared to engage in violence. The evidence lent credence to M.P.'s fear of defendant and its objective reasonableness. It also supported the State's contention that defendant acted purposefully or knowingly in causing fear. Notably, the prosecutor highlighted the gun possession and prior assault in her closing, arguing that those facts made reasonable M.P.'s fear and emotional distress and strengthened the proofs that defendant acted purposefully and knowingly.[3]

Although we conclude that the other-crimes-and-wrongs evidence was admitted in error, reversal of the conviction and a new trial are not necessarily required. At a new trial, the State would have a second opportunity to seek admission of the 404(b) evidence. However, if the evidence were again deemed admissible, there would be no justification for a new trial.

---

[3] The prosecutor argued, "[T]his man beat her before, broke her windows, following through on every threat he made, carried a weapon. Again, that would put a person in reasonable fear of imminent death." She added, "When you've seen him with a weapon, when he's beaten you before, and he threatens to kill you, that is terrorizing."

21

Therefore, we remand initially only for a new N.J.R.E. 104(a) hearing, consistent with the guidance in this opinion, to determine the admissibility of the Rule 404(b) evidence. We presume that at such a hearing, the State will attempt to marshal proofs more persuasive than the hearsay statements conveyed by an officer, but will instead call upon the alleged victim, or other persons with personal knowledge of the other crimes or wrongs.

If the trial court, exercising its gatekeeping role, determines that the State has proved all four prior crimes or wrongs by clear and convincing evidence, then its admission at trial would not have been error, and the jury's verdict, and the court's sentence, which we discuss below, shall not be disturbed. However, if the State fails to make the requisite showing as to one or more of the four prior alleged acts, then, consistent with our rejection of the State's harmless error argument, the conviction must be reversed and a new trial had. See State v. Stubbs, 433 N.J. Super. 273, 289 (App. Div. 2013).

Without intending any criticism of the trial judge's diligence and impartiality, we also order that the hearing be conducted before a different judge, inasmuch as the trial judge has made credibility determinations based on the officer's hearsay testimony. See J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999).

We are unpersuaded by defendant's challenge to his sentence. Exercising our deferential standard of review, State v. Fuentes, 217 N.J. 57, 70 (2014), we are satisfied that the court adhered to sentencing guidelines and relied upon competent and credible evidence, and the sentence was not "clearly unreasonable so as to shock the judicial conscience." Ibid. (quoting State v. Roth, 95 N.J. 334, 365 (1984)).

We recognize that a thirteen-year aggregate sentence for the third- and fourth-degree offenses committed here is at the high end of those typically imposed. But, the trial judge explained in detail his reasoning, in support of his finding of the applicable sentencing factors. In particular, the judge noted defendant's extensive criminal record, which was marked by numerous prior acts of violence, and the failure of previous terms of incarceration to deter defendant's continuing criminal conduct.

Particularly with respect to the imposition of consecutive terms, we discern no abuse of discretion. There is no presumption favoring concurrent sentences. State v. Abdullah, 184 N.J. 497, 513 (2005). And, "there can be no free crimes in a system for which the punishment shall fit the crime." Yarbough,

100 N.J. at 643. The trial judge carefully considered the five factors identified in Yarbough to guide the decision whether to impose a consecutive term:

> (1) whether "the crimes and their objectives were predominately independent of each other"; (2) whether they "involved separate acts of violence or threats of violence"; (3) whether they "were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior"; (4) whether they "involved multiple victims"; and (5) whether "the convictions for which the sentences are to be imposed are numerous."
>
> [State v. Spivey, 179 N.J. 229, 244 n.4 (2004) (quoting Yarbough, 100 N.J. at 633-34).]

The Yarbough factors must be applied "qualitatively, not quantitatively." State v. Carey, 168 N.J. 413, 427 (2001). Consequently, "a sentencing court may impose consecutive sentences even though a majority of the Yarbough factors support concurrent sentences." Id. at 427-28.

The February-to-March course of conduct constituting the third-degree stalking offense ended before defendant committed the terroristic threat in April 2015. Thus, the two offenses were committed at different times and were independent of each other. However, even if one concluded that the two offenses had a common objective – to terrorize and disturb defendant – and even if one treated the terroristic threat as part of the course of conduct – as it fell

within the time-frame of the fourth-degree stalking charge – the trial judge did not err in treating the stalking and terroristic threat offenses as distinct and separate offenses. By its nature, stalking need not rise to the level of a terroristic threat. See Cannel, N.J. Criminal Code Annotated, cmt. 1 on N.J.S.A. 2C:12-10 (2019) (noting that New Jersey "enacted stalking legislation in response to a type of persistent, distressing or threatening behavior generally perceived as more serious than harassment, at least in its persistence, but not yet ripened into terroristic threats or assault"). Here, it did. The court was not obliged to impose concurrent terms, which would depreciate the seriousness of defendant's conduct.

IV.

Finally, we turn to defendant's pro-se arguments. He argues that his due process and fair trial rights were violated because the court compelled M.P. to testify against him when she was unwilling. He contends that on the last day of trial, M.P. appeared in the courthouse, prepared to testify on defendant's behalf, but was unable to enter the courtroom. He highlights M.P.'s partial recantation at sentencing.

We discern no error in the State compelling M.P. to testify. See R. 3:26-3 (authorizing the arrest and compelled testimony of a material witness). We

25

also find no evidence in the record that M.P. was prepared to testify on defendant's behalf during the trial. Defendant failed to appear in court on June 21, 2017 until late in the day's proceedings. By that time, the State already rested; defense counsel unsuccessfully moved for acquittal and then rested as well. There was some discussion at that late stage that defendant had an unnamed witness he wanted to present. The judge did not preclude the possibility of reopening the trial the next day to afford defendant that opportunity. However, the next day, defendant again failed to appear until after closing arguments were heard. Defendant then complained that M.P. was forced to testify, but he did not assert that she was ready and willing to testify on his behalf. Therefore, we discern no basis for defendant's claim that he was deprived a fair trial because he was denied the right to present M.P.'s testimony.

We recognize that M.P.'s post-verdict, partial recantation at sentencing, in September 2017, may have formed the basis of a motion for a new trial, or a petition for post-conviction relief. However, no such motion or petition was made, and we shall not reach the merits of such a motion or petition in the first instance.

Defendant's argument that his right to be present at trial was violated lacks sufficient merit to warrant extended discussion. A defendant may waive his

right to be present by, among other ways, failing to appear after actual notice of the trial date, as occurred here. See State v. Finklea, 147 N.J. 211, 218-19 (1996). Defendant blamed his late arrival one day on his mother, who usually handled his paperwork, and his late arrival another day, based on the claim that the courtroom door was locked. The court properly rejected the first excuse as unacceptable. The court rejected the second as factually baseless, noting that numerous persons freely entered the courtroom when defendant claimed it was closed.

Defendant also contends his defense attorney had a conflict of interest because he dated the assistant prosecutor who was initially assigned the case, but later replaced. He also contends that his attorney was ineffective because he allegedly failed to inform defendant that he was exposed to an extended term; and he would have taken a plea offer of non-custodial probation had he not been misinformed. Both these claims are more suitable to a petition for post-conviction relief, as they rely on evidence outside the trial record. See State v. Preciose, 129 N.J. 451, 459-60 (1992).

V.

In sum, we remand for a new hearing on the admissibility of the other-crimes-or-wrongs evidence before a new judge. If the trial court finds, by clear

27

and convincing evidence, that the prior acts occurred, then the conviction and sentence shall not be disturbed. If the trial court is not so persuaded, then the conviction and sentence shall be reversed, and defendant granted a new trial.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION